PEOPLE v AKINS
PEOPLE v MITCHELL

Docket Nos. 240359, 240360. Submitted October 7, 2003, at Detroit.
Decided December 9, 2003, at 9:00 A.M. Leave to appeal sought.

Aljarrau L. Akins and Jamario A. Mitchell were convicted by separate
juries in a joint trial in the Wayne Circuit Court, Prentis Edwards,
J., of first-degree felony murder and assault with intent to rob
while armed. Mitchell was also convicted of possession of a fire-
arm during the commission of a felony. Following sentencing, the
court vacated Mitchell's sentence for assault with intent to rob
while armed. The defendants appealed, and the appeals were
consolidated.

The Court of Appeals *held*:

1. Assault with intent to rob while armed is a proper underlying
felony to support the defendants' felony-murder convictions. Those
convictions must be affirmed. In order to find a defendant guilty of
assault with intent to rob while armed, a defendant must also nec-
essarily be guilty of attempted robbery. Because attempted armed
robbery is a predicate offense under the felony-murder statute,
MCL 750.316, assault with intent to rob while armed is also a predi-
cate felony under the felony-murder statute.

2. Sufficient evidence was presented to support the defendants'
convictions.

3. The trial court did not abuse its discretion in denying Akins's
request for an adjournment of the trial to accommodate the sched-
ule of a substitute attorney that Akins sought to retain. Akins was
not denied his right to retain counsel.

4. The trial court abused its discretion in admitting testimony
that there was unspecified "independent evidence" that Akins was
the person who shot the victim. The admission of the testimony
was preserved nonconstitutional error. Akins failed to show that it
is more probable than not that the admission of the testimony
resulted in a miscarriage of justice.

5. Any prejudice resulting from improper statements of the pros-
ecutor was alleviated by the trial court's curative instructions.

6. The trial court did not clearly err in concluding that the statements Akins gave to the police were voluntary and admissible at trial.

7. Akins's convictions and sentences for both felony murder and the underlying felony of assault with intent to rob while armed violate double jeopardy protections. The conviction and sentence for assault with intent to rob while armed must be vacated. The convictions and sentences of both defendants, except Akins's conviction and sentence for assault with intent to rob while armed, must be affirmed.

Affirmed in part and vacated in part.

CRIMINAL LAW — FELONY MURDER — UNDERLYING FELONIES — ASSAULT WITH INTENT TO ROB WHILE ARMED.

Assault with intent to rob while armed is a proper underlying felony to support a conviction of felony murder (MCL 750.89, 750.316).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Lamar Moreland*, Assistant Prosecuting Attorney, for the people.

*James C. Hall* for Aljarrau Akins.

*Jonathan B.D. Simon* for Jamario Mitchell.

Before: FITZGERALD, P.J., and ZAHRA and FORT HOOD, JJ.

ZAHRA, J. Following a jury trial, defendants Aljarrau L. Akins and Jamario A. Mitchell were both convicted of first-degree felony murder, MCL 750.316, and assault with intent to rob while armed, MCL 750.89, arising out of the shooting death of Vito Davis. Mitchell was also convicted of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Akins to mandatory life imprisonment for his felony-murder conviction and six to twenty-five years' imprisonment

for his conviction of assault with intent to rob while armed. The trial court sentenced Mitchell to mandatory life imprisonment for his felony-murder conviction, five to twenty-five years' imprisonment for his conviction of assault with intent to rob while armed, and two years' imprisonment to be served consecutively for his felony-firearm conviction.[1] Defendants appealed as of right, and their appeals were consolidated by order of this Court.[2]

The most significant issue presented on appeal is whether assault with intent to rob while armed is a proper underlying felony to support defendants' felony-murder convictions. We hold that it is. Under MCL 750.316(1)(b), felony murder includes murder committed in the perpetration of, or attempt to perpetrate, inter alia, a robbery. Because a person who commits assault with intent to rob while armed also commits the necessarily included lesser offense of attempted armed robbery, which is a well-established predicate felony under the felony-murder statute, we conclude that assault with intent to rob while armed is also a predicate felony under the felony-murder statute. Accordingly, we affirm defendants' felony-murder convictions.

For reasons more fully set forth in this opinion, we affirm in part and vacate in part.[3]

---

[1] In a postconviction order, the trial court vacated Mitchell's sentence for assault with intent to rob while armed as being violative of double jeopardy.

[2] *People v Akins*, unpublished order of the Court of Appeals, entered April 30, 2002 (Docket Nos. 240359, 240360).

[3] We vacate Akins's conviction and sentence for assault with intent to rob while armed as violative of double jeopardy.

I. FACTS AND PROCEDURE

This case arises from the attempted robbery and the shooting death of Vito Davis. Defendants and Osiris Cuesta were admittedly at the scene of the shooting. Defendants gave police conflicting statements relating to the events that led up to the shooting. However, Cuesta, who was the only eyewitness to the shooting to testify at trial, testified that on the day of the shooting, he, Akins, and Mitchell were together on Glenwood Street at about 2:00 A.M., when Antwan Banks approached Akins and had a private conversation with him. Akins then asked Cuesta and Mitchell if they wanted to help him rob someone who would shortly arrive at the home of Banks in a 2001 Cadillac. Cuesta and Mitchell agreed to help with the robbery.

Cuesta, Akins, and Mitchell then went to Mitchell's house to retrieve a 9 millimeter automatic handgun, which Mitchell gave to Akins. The three men returned to Glenwood Street and waited on the porch of a nearby house for the target of the robbery to arrive. While waiting, Cuesta and Mitchell decided not to go along with the robbery, and the three men began walking away down the street. As they were walking away, a Cadillac drove up and stopped near the home of Banks. Without saying anything, Akins turned around and began walking toward the Cadillac. Cuesta followed, intending to go along with the robbery.[4] Akins walked up to the passenger side of the Cadillac, hit the butt of the gun against the car window, and fired one shot into the car. The driver of the

---

[4] Cuesta was not sure whether Mitchell followed him.

Cadillac, Davis, sped away. Akins ran behind the car, pulling the trigger of the gun but no other bullets were discharged. Davis crashed into a parked van on a nearby street and died from excessive bleeding from a gunshot wound to his leg. After the shooting, Akins and Cuesta ran from the scene. Cuesta observed Mitchell, running in front of him toward the home of Akins.

In the days following the shooting, defendants, Cuesta,[5] and Banks[6] were arrested. Both defendants gave statements to the police. Akins told the police that he acted as the lookout man for the robbery, but that Cuesta was the shooter. Mitchell, on the other hand, told the police that Akins was the shooter, but also that he (Mitchell) had supplied the gun used in the shooting and that he had expected to get paid for the use of his gun.

Akins moved to suppress his statements to the police, claiming that they were not voluntarily made. After an evidentiary hearing, the trial court concluded that the statements were made voluntarily and, thus, were admissible at trial. Akins and Mitchell were tried together and convicted by separate juries. After sentencing, the trial court vacated Mitchell's conviction of assault with intent to rob while armed because it was violative of double jeopardy, given his felony-murder conviction. This appeal followed.

---

[5] Cuesta was charged with felony murder and assault with intent to rob while armed. The prosecution agreed to dismiss the charge of felony murder against Cuesta if he agreed to plead guilty to a charge of assault with intent to rob while armed and testify at the trial of Akins and Mitchell.

[6] Banks was convicted by a jury of assault with intent to rob while armed. He was sentenced to fifteen to twenty-five years' imprisonment. His claim of appeal is currently pending before this Court (Docket No. 242324).

II. ANALYSIS

A. *PEOPLE v MITCHELL* (DOCKET NO. 240360)

1. ASSAULT WITH INTENT TO ROB WHILE ARMED AS A PREDICATE FELONY FOR FELONY MURDER

Mitchell first argues that his felony-murder conviction must be reduced to second-degree murder[7] because assault with intent to rob while armed is not one of the enumerated felonies within the felony-murder statute. The prosecution relies on this Court's vacated opinion of *People v Ross*, 242 Mich App 241; 618 NW2d 774 (2000), vacated 465 Mich 909 (2001).[8] In *Ross, supra* at 243, 247-248, this Court held that the offense of assault with intent to rob while unarmed is a predicate offense under the felony-murder statute.[9]

---

[7] During oral argument, appellate counsel for Mitchell indicated that while Mitchell asked for the felony-murder conviction to be reduced to second-degree murder, this request was made improvidently, and the proper remedy is to vacate the felony-murder conviction and reinstate Mitchell's conviction of assault with intent to rob while armed.

[8] A Court of Appeals opinion that has been vacated by the majority of the Supreme Court without an expression of approval or disapproval of this Court's reasoning is not precedentially binding. *Fulton v William Beaumont Hosp*, 253 Mich App 70, 79; 655 NW2d 569 (2002), lv gtd sub nom *Fulton v Pontiac Gen Hosp*, 468 Mich 944 (2003).

[9] Although the Supreme Court did not state its reason for vacating *Ross*, we note that this Court's panel in *Ross* failed to adhere to proper principles of statutory construction when it stated: "The Legislature could not have intended that the crime of attempted unarmed robbery, but not AWIR-U [assault with intent to rob while unarmed], the more dangerous of the two crimes, serve as the basis for a felony-murder conviction." *Ross, supra* at 247. Our Supreme Court has repeatedly directed lower courts to refrain from speculating about the intent of the Legislature beyond the words employed in the statute. *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002); *In re MCI Telecom Complaint*, 460 Mich 396, 414-415; 596 NW2d 164 (1999). We conclude that *Ross* reached the correct result, albeit for the wrong reason. *Ross* exercised judicial authority to correct a perceived legislative oversight. By contrast, we reach our

Because *Ross* was vacated, this issue is before this Court once again as an issue of first impression.[10] We review de novo issues of statutory construction and interpretation. *People v Phillips*, 469 Mich 390, 394; 666 NW2d 657 (2003). "When construing a statute, our primary goal is 'to ascertain and give effect to the intent of the Legislature.' To do so, we begin by examining the language of the statute." *Id.* at 395 (citations omitted). If the language of the statute is unambiguous, a court may read nothing into the words of the statute and must enforce the statute as written. *Id.* " 'Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent.' " *Id.*, quoting *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). The mere fact that a statutory scheme may be difficult to follow does not render any portion of a statute ambiguous. "An ambiguity can be found only where the language of the statute as used in its particular context has more than one common and accepted meaning. Thus, where common words used in their ordinary fashion lead to one reasonable interpretation, a statute cannot be found ambiguous." *Colucci v McMillin*, 256 Mich App 88, 94; 662 NW2d 87 (2003).

---

result in this case by interpreting and applying the unambiguous language of the felony-murder statute.

[10] In *People v Gibson*, 115 Mich App 622, 626-627; 321 NW2d 749 (1982), this Court mentioned assault with intent to rob while armed as a predicate felony for felony murder. However, the issue raised in *Gibson* was a double jeopardy issue, not whether assault with intent to rob while armed was a predicate felony under the felony-murder statute. Therefore, the statement is obiter dictum. *People v Green*, 205 Mich App 342, 346; 517 NW2d 782 (1994).

Mitchell argues that assault with intent to rob while armed is not an offense upon which a felony-murder charge may be predicated. The felony-murder statute provides that a person who commits the following is guilty of felony murder:

> Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping. [MCL 750.316(1)(b).]

There is no dispute that armed robbery falls within the meaning of the term "robbery" in the felony-murder statute. Because an attempt to commit an enumerated offense constitutes a predicate felony under the felony-murder statute, attempted armed robbery also constitutes a predicate felony. The crux of this issue is whether assault with intent to rob while armed constitutes an "attempted robbery" under the felony-murder statute. Mitchell correctly points out that assault with intent to rob while armed is not the same offense as armed robbery, see *People v Kamin*, 405 Mich 482, 501; 275 NW2d 777 (1979) (holding that assault with intent to rob while armed is a lesser included offense of armed robbery), or attempted armed robbery, cf. *People v Sanford*, 402 Mich 460, 474; 265 NW2d 1 (1978) (holding that assault with intent to rob while unarmed is not the same offense as attempted unarmed robbery). But assault with intent to rob while armed is a necessarily lesser included offense of armed robbery, *Kamin, supra* at 501, and attempted armed robbery is a lesser included offense of assault with intent to rob while armed,

*People v Patskan*, 387 Mich 701, 714; 199 NW2d 458 (1972); *People v Bryan*, 92 Mich App 208, 225; 284 NW2d 765 (1979). Thus, attempted robbery is established every time assault with intent to rob while armed is established. *Patskan, supra* at 713-714; *People v Adams*, 128 Mich App 25, 29; 339 NW2d 687 (1983). The distinguishing element between the greater offense of assault with intent to rob while armed and the lesser offense of attempted armed robbery is the element of assault. *Patskan, supra* at 713; cf. *Sanford, supra* at 473-474 (holding that attempted unarmed robbery may be committed simply by putting someone in fear, while assault with intent to rob while unarmed requires an assault with force and violence).[11] In order to find a defendant guilty of assault with intent to rob while armed, a defendant must also necessarily be guilty of attempted armed robbery. Because attempted armed robbery is a predicate offense under the felony-murder statute, we conclude that assault with intent to rob while armed is also a predicate felony under the felony-murder statute. Therefore, Mitchell was properly convicted of felony murder.

### 2. THE SUFFICIENCY AND WEIGHT OF THE EVIDENCE

Next, Mitchell argues that the prosecution failed to present sufficient evidence to support his convic-

---

[11] "The distinction between the element of intent and attempt is . . . a matter of semantics. Intent alone is not enough to convict a person of a crime. There must be an act taken in conjunction with the intent and, once that is done, there is, therefore, an attempt." *Patskan, supra* at 714.

tions.[12] We disagree. In reviewing a claim of insufficient evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Circumstantial evidence and reasonable inferences that arise from the evidence can constitute sufficient proof of the elements of the crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

At trial, the prosecution argued that Mitchell aided and abetted an assault with intent to rob while armed. "The elements of assault with intent to rob while armed are: (1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed. Because this is a specific-intent crime, there must be evidence that the defendant intended to rob or steal." *People v Cotton*, 191 Mich App 377, 391; 478 NW 2d 681 (1991) (citation omitted). The prosecution also charged Mitchell with felony-firearm as an aider and abettor. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Finally, the prosecution argued that Mitchell committed felony murder as an aider and abettor. To convict a defendant of felony murder as an aider and abettor, the prosecution must prove

(1) the crime charged was committed by defendant or some other person, (2) defendant performed acts or gave encour-

---

[12] Mitchell also claims that the verdict is against the great weight of the evidence. We consider this argument in conjunction with Mitchell's claim that the evidence is insufficient to support his convictions.

agement that assisted the commission of the crime, and (3) defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that he gave aid and encouragement. An aider and abettor must have the same requisite intent as that required of a principal. Thus, " 'the prosecutor must show that the aider and abettor had the intent to commit not only the underlying felony, but also to kill or to cause great bodily harm, or had wantonly and wilfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm.' " [*People v Tanner*, 255 Mich App 369, 418-419; 660 NW2d 746 (2003) (citations omitted).]

Mitchell argues that there was not sufficient evidence to support his convictions as a principal or an aider and abettor because he abandoned the crime. "Abandonment is an affirmative defense, and the burden is on the defendant to establish by a preponderance of the evidence voluntary and complete abandonment of a criminal purpose." *People v Cross*, 187 Mich App 204, 206; 466 NW2d 368 (1991). We conclude that Mitchell failed to establish abandonment of his criminal purpose.

The evidence shows that Mitchell gave his gun to Akins, knowing that it would be used to commit the robbery. Mitchell admitted that he witnessed the crime and saw Akins shoot the victim. Mitchell also admitted that, notwithstanding his claim of abandonment, he expected to get paid for the use of his gun. Further, after the shooting, Mitchell expressed an intent go back to the scene and retrieve the bullets that had fallen out of the gun. From these facts, a jury could infer that Mitchell did not abandon his criminal purpose, but instead supplied the gun and watched the attempted robbery with the intent to assist in covering up the crime and the expectation that he would

be paid for his role in the robbery. Further, it can be inferred that Mitchell knew that the gun he supplied to Akins might be used. Thus, it may fairly be inferred that Mitchell wantonly and willfully disregarded the likelihood of the natural tendency of this behavior to cause death or great bodily harm. *Tanner, supra* at 418. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could conclude that sufficient evidence existed to support Mitchell's convictions of felony murder, assault with intent to rob while armed, and felony-firearm as an aider and abettor.[13]

## B. *PEOPLE v AKINS* (DOCKET NO. 240359)

### 1. AKINS'S REQUEST FOR AN ADJOURNMENT OF THE TRIAL TO RETAIN COUNSEL

Akins first argues that the trial court abused its discretion by denying his request to adjourn the trial so that he could retain the counsel of his choice. We disagree. "We review for an abuse of discretion a trial court's exercise of discretion affecting a defendant's right to counsel of choice." *People v Fett*, 257 Mich

---

[13] This same evidence supports the trial court's decision to deny defendant's motion for a new trial based on the great weight of the evidence. A trial court may grant a new trial if it finds the verdict was not in accordance with the evidence and that an injustice has been done. *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003). A motion for a new trial based upon the great weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). The trial court's denial of a motion for a new trial based on the great weight of the evidence is reviewed for an abuse of discretion. *Abraham, supra* at 269. The verdict was not against the great weight of the evidence and, thus, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this basis.

App 76, 88; 666 NW2d 676 (2003). "An abuse of discretion occurs when the result is so contrary to fact and logic that it demonstrates perversity of will, defiance of judgment, or an exercise of passion or bias." *Id.*

"The Sixth Amendment guarantees an accused the right to retain counsel of choice." *Id.* at 80. "However, the right to counsel of choice is not absolute." *Id.* at 84. " 'A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated.' " *Id.*, quoting *People v Krysztopaniec*, 170 Mich App 588, 598; 429 NW2d 828 (1988).

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

In the present case, approximately one month before the trial, Akins wrote a letter to the trial judge requesting that he be allowed to dismiss his appointed attorney. Akins asserted general claims that his attorney was not competently representing him and specifically protested that his attorney had not filed a motion to have a separate jury from his codefendants. Akins also informed the trial judge that he

sought to retain a new attorney to represent him at trial, but that the attorney he sought to retain had another trial on the date of Akins's trial. Therefore, Akins requested that his trial be adjourned.

At a hearing approximately 2½ weeks before trial, Akins again requested that he be allowed to dismiss his appointed attorney because his attorney was not good enough to represent him and because he disapproved of his attorney's talking with the prosecutor. Akins again informed the trial court that the attorney he sought to retain had a schedule conflict with defendant's trial date. The trial court informed Akins that he was free to retain a new attorney, but that he would not adjourn the trial.[14]

The trial court did not abuse its discretion in denying the request by Akins for an adjournment to accommodate the counsel he sought to retain. The trial court was willing to grant the request made by Akins to dismiss his appointed counsel. The only constraint placed on Akins was that he would not be granted an adjournment of the trial. Akins was free to retain any attorney he wanted, as long as that attorney could be present for the scheduled trial date. The trial court's reluctance to adjourn the trial was reasonable, given that Akins was to be tried jointly with Mitchell. Thus, it would have been a heavy burden on the trial court and the other attorneys to adjourn the trial.[15] We therefore conclude that Akins was not

---

[14] The trial court suggested that Akins was trying to adjourn the trial as a delay tactic.

[15] We further observe that Akins had no bona fide dispute with his appointed counsel, because his appointed counsel was responsive to all of Akins's legitimate concerns. Akins's appointed attorney filed a motion to sever trials or, in the alternative, sever the juries, as requested by Akins. The trial court granted Akins's request for separate juries. Further, while

denied his right to retain counsel of his choice. Further, the trial court did not abuse its discretion in denying Akins's request for an adjournment of the trial.

### 2. TESTIMONY THAT THERE WAS "INDEPENDENT EVIDENCE" OF AKINS'S GUILT

Next, Akins argues that the trial court abused its discretion in admitting, over his objection, the testimony of Sergeant Isaiah Smith, who claimed that he had evidence, independent of Cuesta's testimony, that Akins was the man who shot Davis. "A trial court ruling admitting evidence is reviewed for an abuse of discretion." *People v Hine*, 467 Mich 242, 250; 650 NW2d 659 (2002). However, Akins maintains this particular evidentiary ruling denied him his Sixth Amendment right to confrontation. Constitutional issues are reviewed de novo. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

Sergeant Smith never provided the substance of this "independent evidence" of Akins's guilt. Further, neither attorney asked Sergeant Smith to explain his claim of "independent evidence." However, the prosecution indicated out of the presence of the jury that the "independent evidence" was Mitchell's statement to the police. To further complicate the issue, the

---

Akins objected to appointed counsel's conversing with the prosecutor, conversing with opposing counsel before the trial is generally a prerequisite to providing effective assistance of counsel. Nothing in the record supports the conclusion that Akins's appointed counsel did anything improper by speaking with the prosecutor. The absence of legitimate complaints about the performance of appointed counsel, together with the fact that Akins declined to retain new counsel to represent him on his scheduled trial date, supports the trial court's conclusion that the request for adjournment was a delay tactic.

prosecution raised the existence of this "independent evidence" several times in its closing argument. Despite overruling Akins's objection to Sergeant Smith's testimony, the trial court nonetheless gave the following curative instruction to the jury regarding the prosecutor's statements about Sergeant Smith's testimony of "independent evidence":

> Now, during the closing statements by the prosecuting attorney, there was a statement made regarding independent evidence of the defendant's participation in these crimes. You are to disregard that statement. The defense was under no obligation to ask any questions of Sergeant Smith about any independent evidence. Consider only the evidence that was admitted during this trial.

In *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), the United States Supreme Court held that a defendant was deprived of his Sixth Amendment right to confrontation when the facially incriminating unredacted confession of a nontestifying codefendant was admitted at their joint trial, even if the jury was instructed to consider the confession only against the codefendant. *People v Banks*, 438 Mich 408, 415; 475 NW2d 769 (1991). The prosecution does not dispute that Mitchell's statement was inadmissible against Akins. Therefore, there exists no foundation for a claim of independent evidence. We conclude that the trial court abused its discretion in admitting testimony that there was unspecified "independent evidence" that Akins was the shooter.

In order to determine the standard of review applicable to this error, we must first address whether this error denied Akins his constitutional right to confrontation. Significantly, the jury did not see or hear

Mitchell's statement to the police. Rather, the jury only heard that there was some unspecified "independent evidence" that Akins was the shooter. Thus, we conclude that Akins's right to confrontation was not implicated, and the admission of Sergeant Smith's testimony amounts to preserved nonconstitutional error. Accordingly, Akins has the burden of establishing a miscarriage of justice under a "more probable than not" standard. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

Preliminarily, we note that the curative instruction relating to this issue clearly informed the jury not to consider the prosecutor's statements in his closing argument about the "independent evidence." However, it is less clear whether this instruction sufficiently informed the jury to disregard Sergeant Smith's testimony confirming the existence of the "independent evidence." But even assuming that this instruction did not inform the jury to disregard Sergeant Smith's testimony, the admission of this testimony did not more probably than not result in a miscarriage of justice because of the overwhelming evidence of Akins's guilt that exists in the trial court record.

Cuesta's testimony established that Akins was the person who fatally shot the victim. Furthermore, even if a question existed whether Akins was the shooter, evidence of Akins's guilt is overwhelming under an aiding and abetting theory. In sum, in light of Cuesta's testimony and the other evidence against Akins, we conclude that Akins failed to show that it is more probable than not that the admission of Sergeant Smith's testimony resulted in a miscarriage of justice.

### 3. PROSECUTORIAL MISCONDUCT

Next, Akins argues that the prosecutor denied him a fair trial by engaging in several instances of misconduct. Akins first argues that the prosecutor engaged in misconduct by: (1) eliciting Sergeant Smith's testimony that there was "independent evidence" that Akins was the shooter, (2) arguing during closing arguments that the jury should convict Akins on the basis of "independent evidence" that he was the shooter, and (3) attempting to shift the burden of proof to the defense, arguing that Akins failed to cross-examine Sergeant Smith regarding this "independent evidence." These preserved allegations of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). " 'Issues of prosecutorial misconduct are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context.' " *People v Gonzalez*, 256 Mich App 212, 222-223; 663 NW2d 499 (2003), quoting *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).

As discussed in Part II(B)(2) of this opinion, the admission of Sergeant Smith's claim of "independent evidence" of Akins's guilt did not result in a miscarriage of justice. Significantly, the trial court instructed the jury that it should disregard the prosecutor's statement during his closing argument regarding independent evidence of Akins's participation in the crime. The trial court also instructed the jury that the defense was under no obligation to cross-examine

Sergeant Smith about the independent evidence. Additionally, the trial court instructed the jury that the lawyers' statements and arguments were not evidence and that the prosecution had the burden to prove Akins's guilt. Therefore, although the prosecutor's statements were improper, any prejudice was alleviated by the curative instructions given by the trial court.[16]

4. VOLUNTARINESS OF AKINS'S STATEMENTS TO THE POLICE

Akins next argues that his statements to the police should have been suppressed at trial because they were made involuntarily. We disagree. This Court reviews de novo a trial court's ultimate decision on a motion to suppress evidence. *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001). Although this Court engages in a review de novo of the entire record, this Court will not disturb a trial court's factual findings with respect to a *Walker*[17] hearing unless those findings are clearly erroneous. *People v Daoud*, 462 Mich 621, 629; 614 NW2d 152

---

[16] Defendant also argues that the prosecutor improperly appealed to the jury's sympathy for the victim during his closing argument. Akins failed to preserve for appeal this incidence of alleged prosecutorial misconduct. This alleged instance of misconduct occurred when the prosecutor stated during closing arguments, "Vito Davis is not here. Mr. Davis does not have a son, Mrs. Davis does not have a son, his brother doesn't have a brother, his cousin does not have a cousin." This Court has held that "[a]ppeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). In this case, however, the prosecutor's comment was isolated and not overly inflammatory, and the prosecutor did not blatantly appeal to the jury's sympathy. The trial court instructed the jury not to let sympathy or prejudice influence its verdict. Under these circumstances, defendant was not prejudiced by the prosecutor's remark, and reversal is not required. *Id.* at 592.

[17] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

(2000). "A finding is clearly erroneous if it leaves us with a definite and firm conviction that the trial court has made a mistake." *People v Manning*, 243 Mich App 615, 620; 624 NW2d 746 (2000).

A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966); *Daoud, supra* at 632-639. A confession or waiver of constitutional rights must be made without intimidation, coercion, or deception, *id.* at 633, and must be the product of an essentially free and unconstrained choice by its maker. *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). The burden is on the prosecution to prove voluntariness by a preponderance of the evidence. *Daoud, supra* at 634. In *Cipriano, supra* at 334, our Supreme Court set forth a nonexhaustive list of factors that should be considered in determining the voluntariness of a statement:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

No single factor is necessarily conclusive on the issue of voluntariness, and "[t]he ultimate test of admissi-

bility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id.*

In the present case, the following evidence supported the trial court's ruling that Akins's statements were voluntary: (1) testimony by Sergeant Smith and Officer Anthony Jackson that, before Akins made both of his statements, Akins read and initialed a document setting forth his constitutional rights; (2) testimony by Sergeant Smith and Officer Jackson that the officers read Akins his constitutional rights and Akins indicated that he understood them; (3) testimony by Lieutenant Raymon Nolan, Sergeant Smith, and Officer Jackson that Akins did not ask for an attorney or ask to speak to anybody before he made the statements; (4) testimony by Sergeant Smith and Officer Jackson that they made no threats or promises to Akins; (5) testimony by Lieutenant Nolan, Sergeant Smith, and Officer Jackson that Akins did not appear to be under the influence of alcohol or drugs; (6) testimony by Sergeant Smith and Officer Jackson that Akins did not say that he was tired, hungry, or thirsty; (7) evidence that Akins's first statement was made approximately four hours after he was arrested; and (8) testimony by Officer Jackson that Akins had an eleventh-grade education.

In contrast, Akins testified at the *Walker* hearing that he had smoked marijuana, drank two shots of cognac, and took an ecstasy pill the day before he made the statements to Sergeant Smith and Officer Jackson. Akins testified that he was "high" when he was arrested and was still under the influence of ecstasy when he made the statements. Akins testified that he told Lieutenant Nolan that he had smoked

marijuana that day.[18] Akins contradicted testimony of the police officers by testifying that he told the police that he did not want to talk and wanted to call his mother so she could hire an attorney for him. Akins claimed that the police would not let him make any calls before he made a statement. Akins also testified that he was handcuffed by the police. According to Akins, the officers promised Akins that he would be released if he made the statements. Akins testified that, when he made the statements, he was both hyper from the ecstasy and tired from staying up late.

The trial court apparently believed the officers' account of what happened, as opposed to Akins's account. The trial court commented on Akins's demeanor while testifying and his memory of the events leading up to the statements, and found that Akins's statements were voluntary. This Court will not disturb a trial court's factual findings with respect to a *Walker* hearing unless those findings are clearly erroneous. *Daoud, supra* at 629. The trial court is in the best position to assess the crucial issue of credibility. *Id.* Therefore, applying the *Cipriano* factors, we conclude that the trial court did not clearly err in concluding that Akins's statements were voluntary and admissible at trial.[19]

---

[18] Intoxication from drugs or alcohol may preclude an effective waiver of *Miranda* rights, but is not dispositive of the issue of voluntariness. *People v Leighty*, 161 Mich App 565, 571; 411 NW2d 778 (1987).

[19] Akins never argued at the *Walker* hearing that the delay in his arraignment caused his statements to be involuntary. Accordingly, the trial court never mentioned or made any findings regarding the delay in arraigning Akins. However, on appeal, Akins briefly mentions this fact in his argument that his statements were not voluntary. Akins was arraigned five days (at least 106 hours) after he was arrested. A delay of more than forty-eight hours between arrest and arraignment is presumptively unrea-

### 5. DOUBLE JEOPARDY

Finally, Akins argues that his conviction and sentence for assault with intent to rob while armed must be vacated because they violate the prohibition against double jeopardy.[20] Because this constitutional issue was not preserved for appeal, we review it to determine if there was plain error affecting Akins's substantial rights. *People v Wilson*, 242 Mich App 350, 359-360; 619 NW2d 413 (2000).

Akins was charged with assault with intent to rob while armed as the underlying felony for the felony-murder charge. He was convicted and sentenced on both charges.

> "Convictions of both felony murder and the underlying felony offend double jeopardy protections. *People v Gimotty*, 216 Mich App 254, 259; 549 NW2d 39 (1996). When a defendant is erroneously convicted of both felony murder and the underlying felony, the proper remedy is to vacate the conviction and sentence for the underlying felony. *Id.* at 259-260." [*Wilson*, *supra* at 360, quoting *People v Warren*, 228 Mich App 336, 354-355; 578 NW2d 692 (1998), rev'd in part on other grounds 462 Mich 415; 615 NW2d 691 (2000).]

---

sonable, but does not automatically require the suppression of statements obtained during the detention period. *Manning*, *supra* at 643.

When a confession was obtained during an unreasonable delay before arraignment, in Michigan the *Cipriano* factors still must be applied. The unreasonable delay is but one factor in that analysis. The longer the delay, the greater the probability that the confession will be held involuntary. At some point, a delay will become so long that it alone is enough to make a confession involuntary. [*Id.*]

Despite the delay in arraignment in the present case, we conclude that, applying all the *Cipriano* factors, the trial court did not clearly err in concluding that Akins's statements were voluntary and admissible at trial.

[20] As discussed, the trial court vacated Mitchell's conviction and sentence for assault with intent to rob while armed in a postconviction order.

Because Akins was convicted and sentenced for both felony murder and the underlying felony of assault with intent to rob while armed, his conviction and sentence for assault with intent to rob while armed must be vacated.

### III. CONCLUSION

In regard to Docket No. 240360, we conclude that (1) assault with intent to rob while armed is a proper underlying felony supporting Mitchell's felony-murder conviction, and (2) the verdict was not against the great weight of the evidence and the evidence was sufficient to justify a rational trier of fact to conclude that Mitchell was guilty of the crimes beyond a reasonable doubt. In Docket No. 240359, we conclude that (1) the trial court did not abuse its discretion in denying Akins's request for an adjournment of the trial so that one specific lawyer of his choice could represent him, (2) the admission of Sergeant Smith's testimony that there was "independent evidence" of Akins's guilt did not amount to a miscarriage of justice, (3) Akins was not denied a fair and impartial trial by the prosecutor's remarks during his closing argument, (4) the trial court did not clearly err in determining that Akins's confession was voluntary, and (5) Akins's conviction and sentence for assault with intent to rob while armed must be vacated because they violate the prohibition against double jeopardy. In summary, we vacate Akins's conviction and sentence for assault with intent to rob while armed, and affirm the remainder of Akins and Mitchell's convictions and sentences.

Affirmed in part and vacated in part.