*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOHN HOWARD MORGAN,

      Defendant-Appellant.

UNPUBLISHED
December 17, 2020

No. 349165
Kalamazoo Circuit Court
LC No. 2018-000787-FC

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant, John Howard Morgan, appeals as of right his bench trial convictions for two counts of first-degree criminal sexual conduct (CSC-I) (sexual penetration involving victim under 13 years old and defendant is 17 years old or older), MCL 750.520b(2)(b); and one count of second-degree criminal sexual conduct (CSC-II) (sexual contact involving victim under 13 years old and defendant is 17 years old or older), MCL 750.520c(2)(b). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 25 to 50 years' imprisonment for the CSC-I convictions and 20 to 30 years' imprisonment for the CSC-II conviction.

On appeal, appellate counsel argues that the trial court erred by failing to make an adequate inquiry in regard to defendant's request for substitute counsel and that there was insufficient evidence supporting defendant's convictions. In addition, in a Standard 4 Brief,[1] defendant asserts that the trial court erred by failing to recuse itself from presiding over defendant's bench trial because it was aware that defendant had failed a polygraph examination, and his counsel was ineffective for failing to object. However, for the reasons explained in this opinion, we conclude that these claims are without merit and affirm defendant's convictions and sentence.

This case arises out of the sexual assault of the victim, who was 20 years old at the time of defendant's trial. However, the abuse occurred in 2009 and 2010, when the victim was in

---

[1] Defendant's supplemental brief was filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

elementary school. Defendant had a romantic relationship with the victim's mother. Following a one-day bench trial, the trial court found defendant guilty two counts of CSC-I and one count of CSC-II. This appeal followed.

First, defendant argues that the trial court abused its discretion by denying defendant's second request for substitute counsel. We disagree.

"A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted).

" 'An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced.' " *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015), quoting *Traylor*, 245 Mich App at 462. A defendant who requests substitution of counsel must make a "showing of good cause," and the substitution must "not unreasonably disrupt the judicial process." *McFall*, 309 Mich App at 383. "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *Id.* (quotation marks and citations omitted). The fact that "a defendant lacks confidence in his or her attorney, unsupported by substantial reason, does not amount to adequate cause." *Id.* In addition, "a defendant's general unhappiness with counsel's representation is insufficient." *Id.*

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003) (quotation marks and citation omitted).]

In this case, defendant sought to replace his second appointed attorney the day before trial was scheduled to begin. Defense counsel sought to withdraw, stating that defendant and his family were no longer cooperative. The trial court asked defendant to explain his concerns regarding defense counsel. Defendant stated that counsel was supposed to file a motion to suppress and obtain discovery. Defense counsel had not gone over the case with defendant, and defendant did not feel confident with his representation. Defendant asserted that his counsel advised him to agree to a plea deal; however, defendant could show that he was incarcerated during the offense. Defendant also complained that he had not yet obtained a DVD recording of the victim's police interview. However, defense counsel explained that he was ready to proceed to trial. The prosecution provided the DVD to the defense, and defense counsel stated that it would be reviewed and possibly be used for impeachment.

-2-

Considering the evidence present in the record, the trial court did not abuse its discretion by denying defendant's request for substitute counsel. Defendant contends that the trial court failed to specifically address the factors provided in *Akins*. However, even if the trial court did not specifically refer to *Akins* or explain that it was considering specific factors, the trial court asked defendant for an explanation for his request, concluded that he had not shown good cause to substitute his current counsel, determined that defendant was merely attempting to delay trial, and explained that defendant was required to show that the failure to call or investigate witnesses resulted in prejudice.

Moreover, defendant has not shown that the trial court erred by rejecting his request. In this case, defendant asserted a constitutional right, his right to retain his counsel of choice. See *id*. However, defendant failed to establish that he had a legitimate reason for asking for substitute counsel. See *id*. Defense counsel stated that he was ready to proceed to trial. The DVD had been provided to the defense and was reviewed. This was also defendant's second request for substitute counsel. He made similar complaints concerning his first attorney, and this second request was made one day before trial. Moreover, defense counsel used the DVD to refresh the victim's memory regarding statements that she had made in the police interview. On appeal, defendant does not identify what other preparation defense counsel should have competed. Finally, at the hearing at which defendant waived his right to a jury trial, defense counsel informed the trial court that the two were proceeding forward in a cooperative manner and defendant agreed. Even if defendant asserted a legitimate right, he failed to establish a legitimate concern regarding his counsel's performance, did not explain why he waited until the day before trial to make his second substitution request, and has not shown that he suffered any prejudice as a result of the trial court's decision. See *id*. As a result, the trial court did not abuse its discretion in denying defendant's request for substitute counsel. See *Traylor*, 245 Mich App at 462.

Next, defendant asserts that there was insufficient evidence supporting his convictions. We disagree.

"Generally, [this Court] reviews a challenge to the sufficiency of the evidence in a bench trial de novo and in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (quotation marks and citation omitted). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *Id*. "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *Id*.

In this case, defendant was convicted of two counts of CSC-I and one count of CSC-II. According to MCL 750.520b(1)(a), a person is guilty of CSC-I if he engaged in sexual penetration with another person who was under 13 years of age. In this case, defendant faced a 25-year mandatory minimum sentence if convicted because he was 17 years or older at the time of the offense. MCL 750.520b(2)(b). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520(r).

MCL 750.520c(1)(a) states that a person is guilty of CSC-II if the person engaged in sexual contact with another person if the other person is under 13 years of age. Defendant was subject to lifetime electronic monitoring because the violation involved an individual 17 years of age of older against an individual less than 13 years of age. MCL 750.520c(2)(b). "Sexual contact" means "the intentional touching of the victim's or actor's intimate parts . . . if that intentional touching can reasonably be construed as being . . . done for a sexual purpose." MCL 750.520a(q).

On appeal, defendant does not argue that the prosecution failed to prove any of the elements of the charged offenses. Instead, he contends that the abuse could not have occurred as the victim alleged because defendant never lived within the same household as the victim.

However, the victim testified that defendant lived with her family at the Alamo Avenue residence (defendant's mother's home) and on Elgin Street. This testimony was corroborated by the victim's mother. Although the victim's mother was unsure with regard to dates, she testified that her family lived with defendant's mother both with defendant and without defendant. Moreover, the detective testified that officers responded to defendant's address on Alamo Avenue for a domestic violence dispute involving the victim's mother in July 2009. Defendant's parole paperwork showed that he lived on Elgin Street in 2010. Defendant's mother contradicted some of this testimony. She stated that defendant lived with her when he was released from prison and that the victim's family did not move into her home until after defendant was back in prison. The trial court did not find this testimony credible. As the finder of fact, the trial court was tasked with determining the credibility of witnesses. See *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016) (stating that "[i]n determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses"). Accordingly, there was sufficient testimony to support the allegation that defendant abused the victim while they were living together on Alamo Street and Elgin Street.

The parties stipulated to the dates in which defendant was incarcerated. As a result, the abuse was required to have occurred between February 2009 and April 2010. Although the victim was unsure of the exact dates on which the incidences occurred, the evidence showed that it was possible that defendant abused the victim at his mother's home and at a residence on Elgin Street in 2009 and 2010. See *People v Naugle*, 152 Mich App 227, 234; 393 NW2d 592 (1986) (stating that "[w]here the facts demonstrate that the prosecutor has stated the date and time of the offense to the best of his or her knowledge after undertaking a reasonably thorough investigation, we would be disinclined to hold that an information or bill of particulars was deficient for failure to pinpoint a specific date").

Defendant also argues that the victim alleged that the abuse occurred over a five-year period, which was impossible considering the dates that defendant was incarcerated. However, that statement comes from the recorded police interview. According to the trial transcript, during the victim's recorded interview with police, the detective stated that the abuse occurred over one year and then the other officer present said that the abuse occurred over a period of five years and the victim responded "yeah." The victim testified at the preliminary hearing that the abuse occurred over the course of one year. She explained at trial that she did not go over a specific timeline with the police. She had to do so with her mother because the abuse happened so long ago. The trial court stated that it would consider this information with all the other evidence. We

do not believe that the victim's agreement with a statement made by a police officer during an interview negates her trial testimony regarding events that occurred almost 10 years prior when she was approximately 9 or 10 years old.

Finally, defendant contends that the fact that the victim did not disclose any abuse to medical staff when she went to the hospital in March 2010, showed that the abuse did not occur. However, the victim's failing to disclose abuse and the attending medical staff's failure to discover abuse is not dispositive. See *People v Kowalski*, 492 Mich 106, 123; 821 NW2d 14 (2012) (explaining that "victims of child sexual abuse sometimes exhibit behavior, such as delayed reporting of abuse or retraction of accusations, that psychologists understand to be common among abuse victims but that jurors might interpret as being inconsistent with abuse"). Ultimately, all the evidence and alleged discrepancies were presented to the trial court to evaluate as the trier of fact. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support defendant's convictions for CSC-I and CSC-II. See *Wilkens*, 267 Mich App at 738.

In defendant's Standard 4 brief, he argues that the trial court erred by not disqualifying itself from his bench trial because it was aware that he had failed a polygraph examination. We disagree.

In this case, the fact that the trial court was aware that defendant failed a polygraph examination was discussed at length at the hearing at which defendant waived his right to a jury trial. However, all parties agreed that the trial court could remain impartial. Defendant never argued that the trial court should recuse itself. As a result, this claim is not preserved for appeal. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Unpreserved claims of error are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-764; 597 NW2d 130 (1999). Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

A criminal defendant is guaranteed the right to trial by an impartial jury. See Const 1963, art 1, § 20. According to MCL 763.4,

> [i]n any case where a defendant waives his right to a trial by jury and elects to be tried by the judge of such court . . . any judge of the court in which said cause is pending shall have jurisdiction to proceed with the trial of said cause, and shall proceed to hear, try and determine such cause in accordance with the rules and in like manner as if such cause were being tried before a jury.

Pursuant to MCL 776.21(5), "[a] defendant who allegedly has committed a crime under [the criminal sexual conduct statutes] shall be given a polygraph examination or lie detector test if the defendant requests it."

In *People v Walker*, 24 Mich App 360, 361-362; 180 NW2d 193 (1970), aff'd 385 Mich 596 (1971), the trial court knew that the defendant had taken and failed a lie detector test and thereafter accepted the defendant's waiver of a jury trial. The record showed "that the trial judge interrogated witnesses prior to trial in the presence of defense counsel and the prosecuting attorney

but in the absence of the defendant." *Id*. This Court concluded that such interrogation was proper because the trial court was seeking information in regard to the defendant's motion for a continuance. *Id*. Therefore, there would not have been any error if the case went to a jury trial as was anticipated. *Id*. However, because the trial court later accepted defendant's waiver of a jury trial, this Court explained that it was "satisfied that had a jury voir dire examination disclosed that any prospective juror possessed the information that the trial judge possessed prior to trial, that juror would have been excused by the trial judge for cause." *Id*. at 362. As a result, this Court explained that the trial court should have recused itself from presiding over defendant's trial because it did "not pass the required test of impartiality." *Id*.

The Michigan Supreme Court later clarified the holding in *Walker*, stating that *Walker* was limited to its facts. *People v Cocuzza*, 413 Mich 78, 83; 318 NW2d 465 (1982). The Supreme Court explained that

> [i]n *Walker* the matter which gave rise to the complaint on appeal concerning disqualification did occur before the jury trial waiver was made. However, the record clearly revealed that the trial judge had developed a bias against the accused which did not comport with the obligation to conduct a fair and impartial trial. [*Id*.[2]]

The defendant in *Cocuzza* initially sought to plead guilty to a charge of breaking and entering. *Id*. at 79. The trial court explained the defendant's rights and elicited a factual basis for the charge; however, the defendant changed his mind about pleading guilty and ultimately waived his right to a jury trial. *Id*. at 79-80. The bench trial was conducted by the same judge who heard defendant's guilty plea. *Id*. The defendant never moved to disqualify the judge at any time in the trial court proceedings. *Id*. On appeal, the Supreme Court rejected the defendant's claim of bias, explaining:

> We perceive no evidence of bias on the part of the trial judge in the instant case. It is true that the trial judge had previously heard the defendant proffer a factual basis for the charge of which he was ultimately convicted. However, we decline to impose upon a trial judge the duty to *sua sponte* raise the question of his disqualification in such circumstances. With full knowledge of the trial judge's prior involvement in this matter, defendant, who was represented by counsel, elected to proceed with a bench trial before that judge. We will not reward the failure to move for disqualification, with assertion of the basis reserved for appellate purposes, by sanctioning a reversal of the defendant's conviction. [*Id*. at 83-84.]

We believe that this case is distinguishable from *Walker* and more analogous to *Cocuzza*. The trial court explained that it was aware that defendant had failed a polygraph examination. However, the trial court elaborated that it did not place much trust in polygraph examinations, that

---

[2] In *Walker*, 24 Mich App at 361, the trial court, addressing defense counsel, stated "But I also didn't realize, and maybe you didn't know before you stepped into the picture, that your client took a lie detector test. Do you know that? And he failed it."

it did not know what questions defendant was asked, and that it had the ability to put the fact aside and its decision would not be affected. The trial court then allowed the parties to place any comments or objections on the record. Defense counsel stated that he informed defendant that the trial court was aware of the polygraph results but that he advised defendant that he trusted that the trial court would ignore that information. Defendant agreed. The trial court advised defendant regarding his rights to a jury trial and accepted defendant's waiver.

Like the defendant in *Cocuzza*, defendant, with full knowledge of the trial court's awareness and representation by counsel, chose to proceed to a bench trial without moving for disqualification in the lower court proceedings. See *id*. at 83-84. Additionally, there is no evidence of bias in this case. The trial court specifically stated that the polygraph results would not affect its decision and those results were not discussed during trial or in the trial court's ruling. As a result, defendant has not shown plain error affecting his substantial rights, see *Carines*, 460 Mich at 763, and he is not entitled to a reversal of his convictions on the basis of the circumstances in this case. See *Cocuzza*, 413 Mich at 83-84.

Finally, defendant asserts that his counsel was ineffective for failing to inform defendant that the trial court was held to the same standard of impartiality as a jury and for failing to request that the trial court recuse itself from defendant's bench trial. We disagree.

Defendant failed to move for a new trial or an evidentiary hearing in the trial court on the basis that he was denied the effective assistance of counsel. Therefore, this claim is unpreserved. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because defendant failed to move for a new trial or an evidentiary hearing, this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. *Sabin (On Second Remand)*, 242 Mich App at 659. "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin (On Second Remand)*, 242 Mich App at 659. "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

First, defendant does not present any evidence that defense counsel failed to explain that the trial court was subject to the same standards as a jury in regard to impartiality. Second, the trial court explained that it would remain impartial regardless of the polygraph results and defendant agreed. Defense counsel stated that it was defendant's idea to have a bench trial and that, after a discussion, defense counsel believed that defendant was making an informed decision. As a result, defendant has not shown that defense counsel was deficient in this regard. See *id*.

Moreover, as discussed earlier in this opinion, defendant has not presented any evidence of bias to contradict the statements that the trial court made before trial. Accordingly, defendant has not established that any alleged error by defense counsel affected the outcome of the proceedings. See *id*. Therefore, defendant has failed to establish that his counsel was ineffective. See *id*.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto