# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL DUANE LAWRENCE,

        Defendant-Appellant.

UNPUBLISHED
September 8, 2015

No. 321433
Saginaw Circuit Court
LC No. 13-039249-FC

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Defendant, Michael Duane Lawrence, appeals as of right his convictions, following a jury trial, of first-degree premeditated murder, MCL 750.316(a), conspiracy to commit first-degree premeditated murder, MCL 750.316(a) and MCL 750.157a, nine counts of possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b, five counts of assault with intent to commit murder, MCL 750.83, carrying a concealed weapon, MCL 750.227, carrying a dangerous weapon with unlawful intent, MCL 750.226, felon in possession of a firearm (felon in possession), MCL 750.224f, and discharging a firearm from a vehicle, MCL 750.234a. The trial court sentenced Lawrence to serve life without parole for his convictions of first-degree premeditated murder and conspiracy to commit murder, 550 to 850 months for assault with intent to commit murder, 60 to 120 months for carrying a dangerous weapon with unlawful intent, carrying a concealed weapon, and felon in possession, 58 to 180 months for discharging a firearm from a vehicle, and concurrent prison terms of 60 months' imprisonment for each felony-firearm conviction. We affirm Lawrence's convictions and sentences, but remand for administrative correction of his sentence for conspiracy to commit murder.

## I. BACKGROUND FACTS

In the evening of August 29, 2012, six-year-old Layla Jones was shot and killed after she spent the evening with family and friends on Essling Street in Saginaw. According to Julian Ruiz, he spent that day at Rico Saldaña's house playing video games, watching movies, and

smoking marijuana with Lawrence, Saldaña, and Levonne Greer.[1]  Ruiz testified that they learned that a young boy from their neighborhood had been murdered earlier that day.  Saldaña asked Ruiz to see if he could borrow a Buick Skylark belonging to Ruiz's sister.  When the four men got into the Skylark, Saldaña drove, Lawrence was in the front passenger seat, Greer was in the back seat behind Saldaña, and Ruiz was in the back seat next to Greer.  According to Ruiz, Lawrence and Greer each had guns on their laps.

Ruiz testified that as the men turned onto Essling Street, one of the men in the car said, "there goes somebody."  Saldaña slowed the car to a roll at the bottom of a driveway.  Lawrence reached across Saldaña and fired his gun from the driver's side front window while Greer fired from the driver's side rear window.  Ruiz testified that after ten or twelve shots were fired from the car, he heard four or five shots come from outside the car, and the car was hit three times.  Saldaña accelerated and drove back to his house.

Karen Cope testified that when the gunfire began, she had just pulled her car into the house on Essling Street where six members of her family lived.  She had driven her son Shawrone Jones and his daughter, Layla, to the home earlier in the evening and was returning to pick them up.  Shawrone testified that as he was opening the rear passenger side door for Layla, he heard gunshots.  Shawrone was shot in the stomach and leg, fell down in the grass, and could not remember anything else.

Raphael Austin testified that after the shooting stopped, he saw Layla lying on the ground.  Austin got into Karen Cope's car with Layla and they went to the hospital.  Layla was shot through the heart and lungs, and she died at the hospital shortly after the shooting.

## II.  SUFFICIENCY OF THE EVIDENCE

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law.  *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).  This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction.  *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).  We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt.  *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997).

First, Lawrence contends that the evidence was insufficient to support his first-degree murder conviction because there was no evidence that he intended to kill Layla or that the shot that killed Layla came from the car.  We disagree.

---

[1] Greer was convicted of crimes related to this shooting, and this Court upheld his convictions on appeal.  *People v Greer*, unpublished per curiam opinion of the Court of Appeals, issued January 22, 2015 (Docket No. 318286).

"[N]on-felony first-degree murder is a specific intent crime." *People v Langworthy*, 416 Mich 630, 645-646; 331 NW2d 171 (1982). Under the doctrine of transferred intent, if the evidence shows that the defendant intended to kill one person but accidently killed another, the defendant's intent to kill transfers from the intended victim to the actual victim and the defendant may be guilty of first-degree murder of the actual victim. *People v Youngblood*, 165 Mich App 381, 388; 418 NW2d 472 (1988). The finder of fact may infer a defendant's intent to kill from the use of a dangerous weapon. *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). Additionally, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

In this case, Ruiz testified that Lawrence and Greer had guns as Saldaña drove through the neighborhood where Layla was shot. According to Ruiz, someone said "there goes somebody," Saldaña slowed the car down, and Lawrence and Greer shot from inside the car. The jury was reasonably able to infer from Lawrence's decision to shoot a weapon from the car in response to someone's statement that "there goes somebody" that Lawrence intended to kill *somebody*. His intent to kill someone transferred to Layla, who was actually killed by his actions.

There was also sufficient circumstantial evidence to support the jury's finding that the shot that killed Layla came from the car. Shawrone testified that as he put his hand on the handle of the passenger side door to open it for Layla, he heard shots, looked toward the end of the driveway, and saw flashes coming from a car. Shawrone, who was close to Layla, was shot twice. The jury could reasonably infer from this testimony that Shawrone was shot from the car and, because Shawrone was in close proximity to Layla at the time, that Layla was also shot from the car instead of from another location. While there was evidence that Layla may have been shot by someone shooting at the Skylark, the jury was in the best position to weigh this conflicting evidence and determine the most likely location from which Layla was shot. See *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) (holding that we must resolve conflicting evidence in the prosecution's favor). Viewing the evidence in a light most favorable to the prosecution, we conclude that the evidence was sufficient to support Lawrence's first-degree murder conviction.

Second, Lawrence contends that the evidence was insufficient to support his conviction of assault with intent to commit murder because there was no evidence that he shot toward the victims. We disagree.

"The elements of the crime of assault with intent to commit murder are (1) an assault, (2) an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Plummer*, 229 Mich App 293, 305; 581 NW2d 753 (1998). An assault can include an attempt to commit a battery or an unlawful act that "places another person in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005).

In this case, four victims testified that they heard shots and attempted to take cover and Shawrone was actually shot. Karen Cope testified that she was near her car when it was fired upon. Trace Cope testified that he was standing on the porch with Raphael Austin when Karen Cope arrived, he heard eight to twelve gunshots come from the street, and he threw himself to the ground. Austin also testified that he saw a car turn the corner, heard shots, and threw himself

-3-

to the ground. Austin testified that the home's front door had bullet holes in it when he stood back up. Sade Darby testified that she was inside the house near the front door when she heard gunshots and fell to the floor.

On the basis of this evidence, we conclude that a reasonable juror could infer that shots were fired in the direction of these five victims, and that each of the victims was placed in a reasonable apprehension of an immediate battery. Therefore, sufficient evidence supported Lawrence's convictions of assault with intent to commit murder.

III. COUNSEL OF CHOICE

Lawrence contends that the trial court's decision not to grant him a continuation so that retained counsel could prepare for trial denied him counsel of choice because he was forced to proceed to trial with appointed counsel. We disagree.

This Court reviews de novo issues of constitutional law. *People v Vaughn*, 491 Mich 642, 650; 821 NW 2d 288 (2012). We review for an abuse of discretion the trial court's decision to deny a motion for a continuance. *People Echavarria*, 233 Mich App 356, 368; 592 NW2d 737 (1999). We also review for an abuse of discretion decisions affecting a defendant's right to counsel of choice. *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

An accused has the right to counsel for his or her defense. US Const, Am VI; Const 1963, art 1, § 20. A defendant's right to counsel under Michigan's constitution is the same as that guaranteed by the Sixth Amendment to the US Constitution. *People v Reichenbach*, 459 Mich 109, 118, 587 NW2d 1 (1998). The Sixth Amendment right to counsel includes the right to retain counsel of the defendant's choice. *Akins*, 259 Mich App at 557. However, the defendant's right to counsel of choice is not absolute. *Id*. The United States Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice against . . . the demands of its calendar." *United States v Gonzalez-Lopez*, 548 US 140, 152; 126 S Ct 2557; 165 L Ed 2d 409 (2006).

When reviewing the trial court's decision whether to grant a continuance, we consider whether the defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments. *Echavarria*, 233 Mich App at 369; *People v Wilson*, 397 Mich 76, 81; 243 NW2d 257 (1976). We may also consider the trial court's interest in the efficient administration of justice. *Akins*, 259 Mich App at 557.

In this case, on December 2, 2013—shortly before Lawrence's trial was scheduled to begin—Lawrence asked the court to allow him to replace his appointed counsel with counsel that his family had retained for him. The trial court informed Lawrence that his retained counsel had filed an appearance in another murder case against Lawrence, but not in this case. Because

appointed counsel stated that he was ready to go forward, and retained counsel had not filed an appearance,[2] the trial court determined that the trial would proceed. The jury was selected on December 12, 2013.

An illness required the trial court to delay the trial. Retained counsel filed an appearance in the case on December 17, 2013, and the court signed an order allowing substitution of counsel on January 2, 2014. When the trial resumed on January 8, 2014, retained counsel requested a continuation, explaining that he needed at least two months to prepare for trial.

The trial court denied retained counsel's request, reasoning that the joint trial had started nearly one month prior, there was no breakdown in the attorney-client relationship, and the anticipated testimony was well-known because it was already presented at three preliminary examinations and in one trial. In light of the court's denial, retained counsel asked the court to allow him to withdraw and to re-appoint appointed counsel, who had already stated he was prepared for trial. The trial court did so, and the case proceeded to trial.

We conclude that the trial court's decisions fell within the range of principled outcomes. While Lawrence, in seeking to adjourn his trial, legitimately asserted a constitutional right and had not requested previous adjournments, retained counsel was not prepared to try the case despite having had a month to do so. As the trial court indicated, the expected testimony was explored in three preliminary examinations and another trial, so preparing for trial should not have been unduly burdensome. Despite Lawrence's assertions on appeal, there is no record evidence to support that Lawrence was dissatisfied with appointed counsel or did not trust him. To the contrary, appointed counsel stated that the attorney-client relationship had not broken down, and Lawrence did not voice any disagreement with that statement.

Importantly, adjourning the trial would not have promoted the efficient administration of justice. Lawrence's joint trial with Saldaña had already begun. Rescheduling the trial court, the other defense attorney, the prosecutor, and the witnesses would have been difficult and burdensome. Severing the trial would have required the selection of another jury, which took two days in this case, as well as rescheduling.

The trial court was willing to allow Lawrence counsel of choice if the substitution did not unduly burden the administration of justice by further delaying a trial that had already begun. Unfortunately, retained counsel was not prepared to proceed. We conclude that the trial court did not abuse its discretion.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Lawrence contends that appointed counsel rendered ineffective assistance by failing to exercise a peremptory challenge to remove a juror after the trial court denied counsel's challenge for cause. We disagree.

---

[2] At a later hearing, retained counsel explained he chose not to file an appearance in this case because he was retained a week before trial and he knew that he would not have time to prepare.

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). But a defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). When the trial court has not conducted a hearing, our review is limited to mistakes apparent from the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 86 (2012).

To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). "[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *Vaughn*, 491 Mich at 670. When considering an unpreserved claim of ineffective assistance of counsel, we must consider the possible reasons for counsel's actions. *Id.*; *Cullen v Pinholster*, 563 US 170, ___; 131 S Ct 1388, 1407; 179 L Ed 2d 557, 578 (2011).

In this case, Juror 81 stated during voir dire that Layla was about the age of her granddaughters, and she was uncertain whether she could be fair and impartial to both sides. Outside of Juror 81's presence, defense counsel moved to exclude her for cause. The trial court denied counsel's challenge. Juror 81 stated in response to further voir dire that she would not be predisposed to find Lawrence guilty, but instead would require evidence to establish his guilt. Defense counsel exercised three peremptory challenges, none of which excused Juror 81.

We conclude that counsel's decision not to excuse Juror 81 constituted sound trial strategy. The trial court had previously rejected a challenge against Juror 81 for cause that counsel based on her hesitance about whether she could be fair and impartial. Thus, the trial court was not convinced that Juror 81 would be unfair and partial, and counsel may have reasonably reached the same conclusion. Further, counsel was able to view Juror 81 and listen to her responses to questions. It is possible that Juror 81's statement that she would consider the lack of evidence to determine the case was more confident than her previous, ambiguous responses to whether she could be fair and impartial. Given that counsel's case rested in the lack of evidence against Lawrence, counsel might have determined that her second statement had much more worth. Accordingly, Lawrence has not established that defense counsel's decision not to exclude Juror 81 constituted unsound trial strategy.

## V. ADMINISTRATIVE CORRECTION OF LAWRENCE'S SENTENCE

Though Lawrence did not raise the issue on appeal, we sua sponte conclude that his sentence must be corrected. A person sentenced to a term of imprisonment for conspiracy to commit first-degree murder is eligible for parole. *People v Jahner (After Remand)*, 433 Mich 490, 504; 446 NW2d 151 (1989). In this case, the trial court erred by sentencing Lawrence to life without parole for conspiracy to commit murder. However, it properly sentenced Lawrence

to life imprisonment without the possibility of parole for first-degree murder, and correction of his sentence provides him no substantive relief. Accordingly, we remand the matter to the trial court for administrative correction of Lawrence's sentence. Cf. *People v Herndon*, 246 Mich App 371, 392-393; 633 NW2d 376 (2001) (remanding for correction of a judgment of sentence to reflect that defendant was convicted of one count of murder under two theories, not two counts of murder). Lawrence is not entitled to a resentencing hearing because correcting his judgment of sentence is an administrative task. See *id*. at 393.

We affirm Lawrence's convictions and sentences, but remand for administrative correction of Lawrence's sentence for conspiracy to commit murder. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

-7-