# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEROME JOSEPH MATTHEWS,

Defendant-Appellant.

UNPUBLISHED
September 13, 2016

No. 327632
Kent Circuit Court
LC No. 14-011325-FH

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 6 to 50 years' imprisonment. We affirm defendant's conviction, but remand for *Crosby*[1] proceedings pursuant to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

On November 13, 2014, police officers and parole agents conducted a search of defendant's residence at 1901 Bradford in Grand Rapids. In the kitchen, authorities found a garbage bag containing three smaller "knotted up plastic bags" filled with a "white chunky substance." The substance in two of the smaller bags tested positive for cocaine, while the third bag contained a suspected cutting agent. The total amount of cocaine recovered was 26.49 grams, or approximately 260 "rocks" of crack cocaine, with a total value of approximately $5,200. In addition to the drugs, authorities found drug paraphernalia and materials for packaging narcotics for sale, including baggies with missing corners, a box for a digital scale, syringes, a hypodermic needle "full of liquid," "Chore Boy," a spoon for heating drugs, and a used crack pipe. In a jacket belonging to defendant, authorities also found approximately $1,680 in cash. Defendant, who was present during the search, was arrested and advised of his rights. According to police, defendant admitted that he was a drug addict and that he was involved with drug sales "because he is a user, and also to make ends meet." Defendant also offered to call someone to obtain 100 grams of cocaine, which would be "fronted" to defendant for sale.

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2 2005).

At trial, an expert in street-level narcotics sales opined that the amount of cocaine found was for delivery, not personal use. The prosecution also presented evidence of defendant's prior bad acts under MRE 404(b). In particular, in 2010, a police search of defendant's apartment resulted in the recovery of drugs, over $1,000 in cash, packaging materials, and pills. In 2008, defendant was arrested with 20 rocks of crack cocaine, including some that were individually packaged in the corners of baggies, as well as approximately $350 in cash.

The defense theory at trial was that the drugs, and other drug-related items recovered at 1901 Bradford, did not belong to defendant; rather, the items belonged to Nancy Deeb, who died of a drug overdose before trial. At the time of the search, defendant had only been living in the residence for approximately two weeks and, when the search was conducted, three other individuals were also present in the home, including Deeb. Defendant testified that, when police came to the door, Deeb took a bag from the bedroom and placed it in the kitchen. Further, although defendant admitted telling police that he could call someone to obtain drugs, defendant denied telling police that he had a drug problem or that he was selling drugs. According to defendant, he had used drugs in the past, but he had been to drug rehabilitation and he was no longer "messing around with drugs." With regard to the large sum of money recovered in his jacket, defendant testified that he saved the money working various jobs.

The jury found defendant guilty of possession with intent to deliver less than 50 grams of cocaine.[2] Defendant now appeals as of right.

## I. EFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that he was deprived of the effective assistance of counsel on several grounds. Defendant did not move for a new trial or a *Ginther*[3] hearing. Thus, defendant's claims are unpreserved and our review is limited to errors apparent on the record. *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005).

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id*. Decisions regarding what evidence to present, whether to object to evidence, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008); *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). "We will not second-guess matters of strategy or use the benefit of

---

[2] Defendant was also charged with maintaining a drug house, MCL 333.7405(1)(d). The jury found defendant not guilty of this charge.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

hindsight when assessing counsel's competence." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

Defendant first argues that trial counsel was ineffective for failing to object to the admission of other-acts evidence, i.e., police testimony concerning defendant's 2008 and 2010 drug-related arrests. See MRE 404(b). Defendant's argument is without merit because any such objection would have proved futile, and counsel cannot be considered ineffective for failing to make a futile objection. See *Horn*, 279 Mich App at 39-40. In any event, even assuming such an objection would have succeeded, defendant has not overcome the presumption that the decision not to object was a matter of trial strategy and, given the considerable evidence of defendant's guilt, defendant has not shown that he was prejudiced by counsel's failure to object.

In particular, MRE 404(b)(1) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." While not admissible for propensity purposes, evidence of other acts may be admissible for other purposes, including intent, knowledge, preparation, scheme, plan, or system of doing an act. MRE 404(b)(1). To introduce evidence under MRE 404(b), the prosecutor must satisfy a four-part standard:

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402. . . ." Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox,* 469 Mich 502, 509; 674 NW2d 366 (2004) (citations omitted).]

To be relevant, evidence must be both material and probative, meaning that the evidence tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Crawford*, 458 Mich 376, 388-389; 582 NW2d 785 (1998) (citation omitted). When the evidence is used for purposes of establishing intent, "logical relevance dictates only that the charged crime and the proffered other acts 'are of the same general category.'" *People v VanderVliet*, 444 Mich 52, 80; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994) (citation omitted).

In this case, the prosecutor used the evidence of defendant's previous drug-related arrests to argue that defendant intended to sell the quantity of cocaine recovered at 1901 Bradford.[4]

---

[4] For example, during closing arguments, the prosecutor rhetorically asked: "what evidence . . . can you look at in this trial and say, hey well, there's evidence of possession with intent to deliver crack cocaine[?]" In answer to this question, the prosecutor then identified (1) the amount of cocaine, (2) the baggies with missing corners, (3) the "insane amount of cash" in defendant's jacket, and (4) the testimony about the 2008 and 2010 incidents which showed the "same method of operation," i.e., drugs and large sums of cash. Similarly, elsewhere the prosecutor argued that "possession with intent to deliver" is "not personal use" and that the evidence showed defendant was "using this house *to sell* his crack cocaine." To support this

First, this was a proper, non-propensity purpose for the introduction of the evidence under MRE 404(b)(1).  Second, by pleading not guilty, defendant placed all elements of the offense at issue, including the question of his intent, and thus the evidence, which tended to make it more likely that defendant intended to sell the drugs in question, was both material and probative.  While the past instances were not identical to defendant's current conduct, all the instances in question involved possession of drugs in circumstances indicative of an intent to distribute, including the quantity of drugs in defendant's possession, the quantity of cash involved, and the packaging of the narcotics.  See generally *People v Wolfe*, 440 Mich 508, 524-525; 489 NW2d 748 (1992), amended 440 Mich 508 (1992).  In other words, in each instance, defendant's conduct fell within the same "general category," and the events were sufficiently similar to be logically relevant to the issue of defendant's intent in the present case.  See *VanderVliet*, 444 Mich at 79-80.  Third, while the evidence of defendant's prior bad acts was prejudicial to defendant, it was not unfairly so, and the risk of unfair prejudice did not substantially outweigh the evidence's probative value.  See MRE 403; *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005).  Finally, the trial court gave a limiting instruction on the use of the prior bad acts evidence, mitigating the risk of any prejudicial effect.  See *People v Orr*, 275 Mich App 587, 593; 739 NW2d 385 (2007).  Overall, we are persuaded that the evidence in question was admissible, and counsel was not ineffective for failing to raise a meritless objection.

Moreover, even assuming counsel could have succeeded on an objection to the MRE 404(b) evidence, defendant has not overcome the presumption that the decision not to object was a matter of trial strategy and defendant has not established a reasonable probability that, but for counsel's failure to object, the outcome of the trial would have been different.  At trial, part of defendant's testimony was that he had been "involved" with drugs all his life, but he asserted that he had gone through rehab and that he was no longer using or selling.  By admitting that he had a history with drugs, defendant had a means of explaining some of his comments to police, including, for example, his remark that he had the connections to call someone to obtain drugs.  Given that admitting defendant's history with drugs appears to have been part of a trial strategy, counsel may have reasonably concluded that there was no reason to object to the other acts evidence and thus defendant has not overcome the presumption that counsel's decision not to object was a matter of strategy.  In addition, with regard to the question of prejudice, there was ample evidence to support the jury's verdict independent of the other act testimony, including the quantity of drugs found in the residence, the packaging materials, and the money recovered in defendant's jacket, as well as police testimony that defendant admitted he had a drug addiction and sold drugs "to make ends meet."  Further, the jury acquitted defendant of maintaining a drug house, belying defendant's claim that the other-acts evidence caused the jury to convict defendant merely on the basis of his criminal propensities.  On this record, defendant has not shown that he was prejudiced by counsel's failure to object to the MRE 404(b) evidence.  On the whole, defendant has not demonstrated that he was denied the effective assistance of counsel based on counsel's failure to object to the prior bad acts evidence.

---

assertion, the prosecutor argued that "just like in 2010, when he's got over a thousand dollars, he's got over a thousand dollars here.  Just like in 2008, when he's got the 20 rocks of crack cocaine, which, by the way, were packaged how?  The testimony was, hey, they're packaged in individual corners from the baggies, which is exactly what we have here today."

In his Standard 4 brief, defendant makes several additional arguments regarding the ineffective assistance of counsel.

First, defendant argues that counsel was ineffective for waiving the preliminary examination because if the preliminary examination been conducted, exculpatory testimony would have been revealed. Defendant has failed to establish the factual predicate of this claim because defendant has not asserted who would have testified on his behalf nor has he shown what testimony these witnesses would have given. See *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). Absent such evidence, defendant also has not shown prejudice from the waiver of the preliminary examination. Given that defendant's conviction "was based on proof beyond a reasonable doubt, we can surmise that had a preliminary examination been conducted, defendant would have been bound over to circuit court for trial since the lesser standard of probable cause is used at preliminary examination." *People v McGee*, 258 Mich App 683, 698; 672 NW2d 191 (2003). Quite simply, on this record, defendant has not shown that counsel was ineffective for waiving the preliminary examination or that, absent waiver of the preliminary examination, there was a reasonable probability of a different outcome.

Second, defendant also claims that counsel failed to obtain the "discovery package," which appears to refer mainly to police reports. The lower court record includes a discovery request by defense counsel, specifically requesting police reports and numerous other items. There is no indication on the record that counsel did not receive the police reports and other relevant discovery materials, and thus defendant has not established the factual predicate of his claim. See *Cooper*, 309 Mich App at 80. Further, there is no indication that any materials purportedly not received would have benefited defendant's case. Absent such evidence, defendant has not established that counsel's performance fell below objective standards of reasonableness or that, but for these alleged errors, there is a reasonable probability of a different outcome.

Third, defendant next argues that counsel was ineffective for failing to introduce testimony from Leona Casteneda and Timothy Hernandez, who were also in the apartment at the time of the search and who allegedly would have testified that the cocaine did not belong to defendant. However, defendant failed to provide an affidavit or other offer of proof from either witness, and there is simply no evidence in the record to support the contention that Hernandez or Casteneda would have provided exculpatory testimony. Thus, defendant has not established the factual predicate of his claim, he cannot establish that counsel's failure to present their testimony deprived him of a substantial defense, and he has not shown that counsel's failure to call these witnesses constituted ineffective assistance. See *People v Putman*, 309 Mich App 240, 249; 870 NW2d 593 (2015).

Fourth, defendant next argues that counsel was ineffective for failing to make an opening statement. This argument is factually meritless because the record reveals that counsel delivered an opening statement. In any event, whether to give an opening statement is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Fifth, defendant also asserts that counsel failed to "effectively" cross-examine witnesses because he only cross-examined "1 or 2 of the prosecution witnesses and only ask[ed] one or two questions." In actuality, the record shows that counsel cross-examined four of the seven

prosecution witnesses, asking numerous questions. How to cross-examine witnesses is presumed to be a matter of trial strategy. See *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). Defendant has not explained with any specificity how counsel's cross-examination was deficient, and he certainly has not overcome the presumption that counsel's cross-examination decisions were a matter of trial strategy. Thus, defendant has not established that counsel's performance fell below objective standards of reasonableness or that, but for counsel's alleged errors, there is a reasonable probability of a different outcome.

Finally, defendant argues that counsel was ineffective for failing to object to police testimony regarding defendant's statement in which he admitted that he sold drugs to fund his drug addiction and to make ends meet. Relevant to this argument, the record makes clear that defendant was advised of his rights and that he voluntarily agreed to speak with police. Defendant does not assert otherwise on appeal. Generally, "when a suspect has been afforded *Miranda* warnings and affirmatively waives his *Miranda* rights, subsequent incriminating statements may be used against him." *People v Tanner*, 496 Mich 199, 209; 853 NW2d 653 (2014). Nonetheless, defendant contends that his statement was involuntary, and thus inadmissible, because it was obtained through means of "trickery" and "deception." However, defendant fails to identify this supposed trickery or deception on the part of the police, and there is certainly nothing in the record indicative of the type of intimidation, coercion, or deception that might render an otherwise voluntary statement involuntary. See generally *People v Akins*, 259 Mich App 545, 564-565; 675 NW2d 863 (2003); *People v Hicks*, 185 Mich App 107, 113; 460 NW2d 569 (1990). Any objection by counsel would have been futile, and counsel is not ineffective for failing to make futile objections. *Horn*, 279 Mich App at 39-40. Overall, defendant has not met his burden of demonstrating ineffective assistance of counsel. *Swain*, 288 Mich App at 643.

## II. PAROLE STATUS

Defendant next argues through his appellate counsel that the trial court abused its discretion in denying his motion for a mistrial after a law enforcement officer testified that he responded to "assist parole." Defendant further argues that the trial court abused its discretion when, on rebuttal, it allowed testimony concerning defendant's status as a parolee.

A trial court's decision whether to grant a mistrial is reviewed for an abuse of discretion. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). Generally, an unresponsive or volunteered answer is insufficient grounds for granting a mistrial; however, "[p]olice witnesses have a special obligation not to venture into such forbidden areas," and unresponsive remarks, when made by law enforcement personnel, will be scrutinized by this Court. *People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983). "A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Jury instructions are "presumed to cure most errors." *Horn*, 279 Mich App at 36.

In this case, Detective Todd Butler testified that, on the day of the search, he and his partner "responded *to assist parole* with an incident" at 1901 Bradford. Considering this remark, we conclude that the trial court did not abuse its discretion in denying defendant's motion for a mistrial because the officer's reference to parole was brief and did not identify defendant as a

parolee. The jury knew that three people other than defendant were located in the apartment at the time of the search. Thus, to the extent the jury could infer that the statement referred to one of the individuals in the home being a parolee, it did not establish that defendant was the parolee. Further, the officer's answer was also volunteered; he was not asked *why* he responded to the apartment. The brief and nonspecific mention of "parole," despite being made by a law enforcement officer and therefore subject to additional scrutiny, was not so egregious as to require a mistrial. *Holly*, 129 Mich App at 415-416; *Gonzales*, 193 Mich App at 266. Moreover, the trial court twice issued a curative instruction, reminding the jurors that any mention of parole was not relevant to whether defendant was guilty of the charged crimes. A curative instruction is presumed to alleviate prejudice. *Horn*, 279 Mich App at 37. Accordingly, the denial of the motion for a mistrial was not an abuse of discretion.

Defendant also argues that, during the prosecution's rebuttal, the trial court erroneously admitted evidence of his status as a parolee. According to defendant, this evidence of his parole status was inadmissible because it was irrelevant and, if relevant, it was more prejudicial than probative.

We review the trial court's decision to admit evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217. "[T]he trial court's decision on a close evidentiary question such as this one ordinarily cannot be an abuse of discretion." *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

In this case, the trial court allowed rebuttal testimony from Randy Dockins regarding Dockins's monitoring of defendant's employment pursuant to Dockins's duties as defendant's parole officer. Specifically, Dockins identified himself as defendant's parole officer, he noted parolees were required to provide proof of employment, and he discussed his recordkeeping in regard to a parolee's employment status. Dockins then testified that, based on a review of his records, defendant had not provided him with paystubs or check stubs. In addition, Dockins testified that, through GPS monitoring of defendant's location, Dockins had observed that defendant "wasn't working when he was telling me he was working." The trial court allowed this testimony after concluding that defendant opened the door to the issue of Dockins's knowledge of defendant's whereabouts and employment. In this regard, defendant testified at trial that he saved the large sum of money found in his jacket by working various jobs and taking items to scrap yards. To support this claim, defendant testified that he "was turning in scrap yard receipts to the guy back there, Randy Dockins." Similarly, defendant claimed that he provided Dockins with "flyers" advertising defendant's offer "to pick up free scrap" and defendant also testified that he turned in check stubs from his jobs to Dockins.

Given defendant's testimony, we conclude that the trial court did not abuse its discretion by allowing Dockins's rebuttal testimony based on the conclusion that defendant opened the door to this testimony. Even if evidence of defendant's parole status would normally be inadmissible and irrelevant, defendant's testimony regarding the proofs of employment he purportedly gave to Dockins opened the door to evidence of his relationship with Dockins and Dockins's monitoring of defendant's employment and whereabouts. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Thus, the trial court did not abuse its discretion by

ruling that defendant opened the door and by admitting Dockins's rebuttal testimony. See *People v Verburg*, 170 Mich App 490, 498; 430 NW2d 775 (1988).

In addition, even assuming Dockins's rebuttal testimony was improper, the admission of testimony concerning defendant's parolee status was harmless. See MCR 2.613(A)(1). The trial court provided a cautionary instruction, informing the jury that defendant's status as a parolee should not affect their decision whether defendant was guilty of the charged crimes, and jurors are presumed to follow their instructions and these instructions cured any error. See *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Indeed, the jury acquitted defendant of maintaining a drug house, demonstrating that the jury was not biased against defendant as a result of its knowledge of his parolee status. Moreover, there was ample evidence, outside of defendant's status as a parolee, to support the jury's verdict, including defendant's admissions to police as well as the quantity of drugs and money recovered during the search. Accordingly, even assuming some error, mention of defendant's parolee status was harmless and does not require reversal. MCR 2.613(A).

## III. MISSING WITNESS INSTRUCTION

In his Standard 4 brief, defendant argues that the trial court abused its discretion by refusing to issue a missing witness instruction, M Crim JI 5.12, with regard to Casteneda and Hernandez. According to defendant, both Casteneda and Hernandez were res gestae witnesses, and defendant claims he was entitled to a missing witness instruction because the prosecution failed to produce these witnesses at trial.

"We review a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion." *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). Under MCL 767.40a, "the prosecutor has a duty to attach to the information a list of all witnesses the prosecutor might call at trial and of all known res gestae witnesses, to update the list as additional witnesses became known, and to provide to the defendant a list of witnesses the prosecution intended to call at trial." *People v Koonce*, 466 Mich 515, 520-521; 648 NW2d 153 (2002). However, the prosecutor is not necessarily required to endorse or produce a res gestae witness for trial. *People v Cook*, 266 Mich App 290, 295; 702 NW2d 613 (2005). If a prosecutor chooses to endorse a witness under MCL 767.40a(3), the prosecutor is obliged to exercise due diligence to produce that witness at trial. *Eccles*, 260 Mich App at 388.

> A prosecutor who fails to produce an endorsed witness may show that the witness could not be produced despite the exercise of due diligence. If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. [*Id.* (citations omitted).]

With regard to a witness who is not endorsed by the prosecution, the prosecution is required to provide "reasonable assistance" to a defendant in locating and serving process, if the defendant requests such assistance not less than 10 days before trial. MCL 767.40a(5); *Koonce*, 466 Mich at 521. If the prosecutor fails to exercise the requisite reasonable assistance, "it might be

appropriate to instruct a jury that the missing witness would have been unfavorable to the prosecution." *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003).

In this case, Hernandez was not endorsed as a prosecution witness. MCL 767.40a(3). Thus, even if he may be considered a res gestae witness, the prosecution had no obligation to produce him to testify at trial. See *People v Kevorkian*, 248 Mich App 373, 441; 639 NW2d 291 (2001). Instead, the prosecution was only obligated to provide "reasonable assistance in locating and serving process upon [Hernandez] *upon the request of defendant*." *Koonce*, 466 Mich at 521 (emphasis added). Defense counsel failed to request assistance in obtaining Hernandez's testimony in a timely manner, MCR 767.40a(5), but the prosecution nonetheless provided some assistance. On this record, we cannot conclude that the prosecution failed in its statutory obligation to provide defendant with reasonable assistance, and defendant was not entitled to a missing witness instruction with respect to Hernandez.

In comparison, the prosecution concedes on appeal that Casteneda was endorsed as a prosecution witness. Thus, the prosecution was required to exercise due diligence to secure her presence at trial. See *Eccles*, 260 Mich App at 388. "The test [of due diligence] is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

In this case, there is minimal evidence in the lower court record regarding the efforts to produce Casteneda. At trial, a detective answered "no" when asked: "And the other female, [Casteneda], were you able to locate her to serve her a subpoena?" There was no other testimony or evidence regarding the efforts to secure her presence. The trial court, in denying defendant's request for a missing witness instruction with regard to Casteneda, nevertheless found that the prosecution exercised the required due diligence: "I believe there's already been testimony they could not find her. I am not—reasonable efforts. I'm not going to issue the instruction."

While the evidence of the prosecution's efforts to locate Casteneda is sparse and we fail to see how the trial court could have made a due diligence finding on the evidence presented, we nonetheless conclude that defendant is not entitled to appellate relief on the basis of the trial court's refusal to give a missing witness instruction. First, as the appellant, defendant bears the burden of providing this Court "with a record to verify the factual basis of any argument upon which reversal was predicated." *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). The only available record evidence is that police were unable to locate Casteneda to serve her with a subpoena. In connection with his request for a missing witness instruction, defendant did not request further factual development regarding the prosecution's efforts and he cannot point to anything in the record that would establish that the prosecutor failed to exercise due diligence. Cf. *id.* Therefore, reversal is not required.

Second, even if the trial court should have given the requested instruction, any error was harmless. When an applicable jury instruction is not given, the defendant bears the burden of establishing that omission of the requested instruction resulted in a miscarriage of justice. *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003). That is, "[r]eversal for failure to provide a jury instruction is unwarranted unless it appears that it is more probable than not that the error was outcome determinative." *Id.* At most, if the missing witness instruction

had been given in the case, the jury could have chosen to infer that Casteneda would have testified that the recovered cocaine did not belong to defendant. This testimony would have been largely cumulative to defendant's testimony, which the jury rejected. In addition, in contrast to the assertion that the cocaine did not belong to defendant, a police officer testified about defendant's incriminating admissions and it was undisputed that the large sum of cash recovered in the home was found in *defendant's* jacket, further supporting the conclusion that defendant possessed the cocaine with the intent to distribute. Given the strong evidence of defendant's guilt, we conclude that any error in the trial court's refusal to give a missing witness instruction was harmless.

## IV. SUFFICIENCY OF THE EVIDENCE

Defendant next argues in his Standard 4 brief that the prosecution failed to present sufficient evidence to support his conviction. Specifically, defendant maintains that there is no direct evidence tying defendant to the drugs, he argues that the drugs could have belonged to Deeb, and he emphasizes that his mere presence is not enough to establish his possession of the cocaine. Defendant also maintains that there is no evidence the substance found was cocaine.

Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor. The question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks, brackets, and citation omitted). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

"To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *McGhee*, 268 Mich App at 622. "Possession may be either actual or constructive." *Wolfe*, 440 Mich at 520. "Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance." *Id*. Constructive possession is established where the defendant "had the right to exercise control over the cocaine and knew that it was present." *Id*. (quotation marks and citation omitted). "[C]onstructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id*. at 521. "Intent to deliver [may be] inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest." *Id*. at 524.

In this case, contrary to defendant's arguments, there was testimony that the substance in two bags recovered in the apartment tested positive for cocaine in an amount totaling just over 26 grams. This evidence was sufficient to allow a rational jury to find that the recovered substance was cocaine and weighed less than 50 grams, the first two necessary elements. *McGhee*, 268

Mich App at 622. With respect to the third element, it is undisputed that defendant was not authorized to possess cocaine. *Id.*

The prosecution also presented sufficient evidence to allow a rational jury to conclude that defendant possessed the cocaine. A detective testified that defendant admitted that he sold drugs to support his drug addiction and "to make ends meet." While defendant denied making such admissions, questions of witness credibility were for the jury. *Unger*, 278 Mich App at 228-229. Beyond defendant's statements, there was additional evidence that defendant possessed the cocaine. Defendant testified that he resided in the apartment, his clothes were found in the only bedroom, the cocaine was found in the apartment's kitchen, and defendant's jacket contained a large amount of cash in small denominations, consistent with street-level drug sales. That the cash was with defendant's jacket strongly supports the inference that he had control of the recovered cocaine. See *Wolfe*, 440 Mich at 520-521, 525. Under the totality of the circumstances, a rational jury could find a sufficient nexus between defendant and the recovered cocaine to establish constructive possession. *Id.* at 520-521.

Likewise, there was sufficient evidence to allow a rational jury to conclude that defendant intended to deliver the cocaine. Two officers testified that the cocaine was present in delivery quantities. Defendant admitted to police that he sold drugs to support his drug addiction and "to make ends meet," and he stated that he could call someone to obtain more drugs to sell on a "fronted" basis. The apartment contained sandwich bags (commonly used for packaging cocaine) and the box for a scale of the type commonly used to weigh drugs. And, the large amount of cash found in defendant's jacket was in small denominations, consistent with street-level drug sales. Defendant's possession of the money supports the conclusion that he was involved in the sale of the drugs and, indeed, it suggests that he was a principal or primary figure in the sale of the cocaine recovered in the home. Cf. *id.* at 525. Thus, a rational jury could have inferred that defendant possessed the cocaine with the intent to deliver it. *Id.* at 524. Accordingly, the evidence was sufficient to allow a rationale jury to conclude that defendant possessed the cocaine with the intent to deliver it.[5] See *McGhee*, 268 Mich App at 622.

V. OV 19

---

[5] In relation to his sufficiency challenge, defendant also asserts that the trial court should have given an instruction on a lesser offense and defendant also complains on appeal that the jury was not required to specify whether its verdict was based on direct liability or a theory of aiding and abetting. These arguments lack merit. A jury is not required to specify whether it convicted a defendant as a principal or as an aider and abettor. See *People v Smielewski*, 235 Mich App 196, 201-202; 596 NW2d 636 (1999). Defendant was also not entitled to a lesser offense instruction such as simple possession. Defense counsel did not request such an instruction and, a rational view of the evidence did not support, and defendant did not contend at any point in these proceedings, that he possessed the seized cocaine but did not intend to deliver it. See *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

-11-

Next, defendant argues that the trial court erred in assessing 10 points for offense variable (OV) 19. In particular, defendant concedes that perjury provides a proper basis for scoring OV 19, but he maintains that his testimony in this case did not rise to the level of perjury.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

OV 19 provides for the assessment of 10 points where the defendant "interfered or attempted to interfere with the administration of justice." MCL 777.49(c). The phrase interfered or attempted to interfere with the administration of justice is "a broad phrase," and conduct need not result in a criminal conviction to be scored under OV 19. See *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Perjury in a court proceeding constitutes an interference or attempted with the administration of justice, and it is therefore a proper basis for assessing 10 points under OV 19. *Id.* at 344; *People v Underwood*, 278 Mich App 334, 338-339; 750 NW2d 612 (2008). By definition, perjury refers to "a willfully false statement about *any* matter or thing concerning which an oath was authorized or required." *People v Lively*, 470 Mich 248, 254; 680 NW2d 878 (2004) (emphasis in original).

In this case, the trial court found that defendant perjured himself regarding his employment history. The trial court stated:

> I'm very familiar with this case, as I sat as trial judge in this matter. I had an opportunity to listen to both the defendant's testimony as well as the direct testimony of the parole agent with regards to this $1,685. I think it was clear beyond any reasonable doubt that the defendant lied with regards to his working and making these checks. I mean, it was very clear from the record that what he was saying trying to explain this money away instead of relating it to drugs was contradicted directly by what the parole agent had to say. He was supposed to keep the parole agent informed if he was making any income or money; he, evidently, had not done that.

The trial court's factual finding that defendant perjured himself at trial was not clearly erroneous. Defendant testified that he worked several jobs and provided Dockins with pay stubs. In contrast, Dockins reviewed his records and testified that he never received a pay stub from defendant and that he reduced defendant's free time because he had been tracked to locations other than the work sites where he claimed to be. The trial court credited Dockins's testimony, and rejected defendant's. We defer to the trial court's assessment of credibility. MCR 2.613(C).

Because the trial court's factual findings were not clearly erroneous and perjury is a proper basis for scoring OV 19, the trial court did not err by scoring OV 19 at 10 points.[6]

## VI. *LOCKRIDGE*

Lastly, defendant argues that he is entitled to the *Crosby* remand procedures described in *Lockridge*. We agree.

In *Lockridge*, the Court held Michigan's sentencing guidelines violated the Sixth Amendment right to a jury trial to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 498 Mich at 364. To remedy this constitutional deficiency, the Court determined that, although the guidelines must still be scored and taken into account at sentencing, the guidelines were now "advisory only." *Id.* at 365. Under *Lockridge,* an unpreserved claim, such as defendant's, is reviewed for plain error, and to warrant appellate relief a defendant must make a "threshold showing of potential plain error," which requires a defendant to demonstrate: (1) that his or her "OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range," and (2) that the defendant was not subject to an upward departure. *Id.* at 394-395, 399.

In this case, defendant has made a threshold showing of potential plain error. In particular, as discussed, the trial court scored OV 19 based on the determination that defendant committed perjury about his employment. A finding of perjury required a determination that defendant made "a willfully false statement about *any* matter or thing concerning which an oath was authorized or required." *Lively*, 470 Mich at 254 (emphasis in original). While the jury seemingly rejected defendant's general version of events when finding him guilty, it did not determine whether defendant made a willfully false statement under oath and, in particular, it did not determine whether defendant made a willfully false statement about his employment.

---

[6] On appeal, defendant also argues that "the scoring of OV 19 for perjury based upon the fact that defendant testified as to his innocence, but was found guilty, raises constitutional concerns" and essentially "becomes a trial penalty" in every case where a defendant chooses to exercise his or her right to testify. We have no such concerns about the scoring of OV 19 in cases of perjury. "[A] defendant's right to testify does not include a right to commit perjury," and a finding that the defendant committed perjury during trial may be properly considered during sentencing without the risk of unnecessarily discouraging a defendant from exercising the right to testify. See *United States v Dunnigan*, 507 US 87, 96-97; 113 S Ct 1111; 122 L Ed 2d 445 (1993). See also *People v Longuemire*, 87 Mich App 395, 399-400; 275 NW2d 12 (1978). Further, the scoring of OV 19 is by no means automatic in every case where a defendant testifies; rather, it is dependent on a finding that the defendant in fact committed perjury. Cf. *Dunnigan*, 507 US at 96-97. The trial court made such a finding in this case and thus the scoring of OV 19 was proper.

Because the jury did not make a finding of perjury and defendant has not admitted to perjury, the scoring of OV 19 at 10 points involved judicial fact-finding.  Further, this 10 point score for OV 19 increased defendant's minimum sentencing guidelines range from 10 to 46 months to 19 to 76 months, and defendant was not subject to an upward departure.  On these facts, defendant has made a threshold showing of potential plain error and he is therefore entitled to a *Crosby* remand for further inquiry to determine whether the trial court would have imposed a materially different sentence knowing that the guidelines are only advisory.  See *People v Jackson*, 313 Mich App 409, __; __ NW2d __ (2015); slip op at 12.  Consequently, we remand for *Crosby* proceedings as set forth in *Lockridge*, 498 Mich at 398.

We affirm defendant's conviction, but remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra