*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PATRICIA MYIA MCDANIEL,

        Defendant-Appellant.

UNPUBLISHED
June 20, 2024

No. 365866
Washtenaw Circuit Court
LC No. 22-000046-FC

Before: YATES, P.J., and BORRELLO and GARRETT, JJ.

PER CURIAM.

For her role in aiding and abetting her codefendant's, Richard Allen-Bass's, sexual assault of her daughter, JM, defendant, Patricia Myia McDaniel, was convicted by a jury of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b. On appeal, McDaniel asserts the trial court abused its discretion by denying trial counsel's motion to withdraw; claims there was insufficient evidence to support her conviction; contends the prosecutor engaged in misconduct by eliciting highly prejudicial testimony and denigrating the defense; and, alternatively, argues that trial counsel was ineffective for failing to object to the prosecutor's statements. McDaniel's arguments lack merit because the trial court's decision to deny the motion to withdraw was within the range of reasoned and principled outcomes, and her conviction was supported by sufficient evidence. Further, because McDaniel failed to prove she was prejudiced by any alleged misconduct or that the prosecutor's comments about the defense even amounted to misconduct, she cannot establish that she was denied the effective assistance of counsel for failure to object. Accordingly, we affirm McDaniel's conviction.

## I. BACKGROUND

For reasons unrelated to the sexual assault, in January 2021, Child Protective Services (CPS) removed JM and her other siblings, including her younger brother, JM2, from their mother. CPS placed JM and JM2 in the care of McDaniel's cousin, AB. In July 2021, JM disclosed to AB that she had been sexually assaulted by "Richie Rich"—Allen-Bass. According to JM, in Fall 2020, when she was about 7 years old, she was asleep in her bedroom with her siblings when her mother woke her up. McDaniel told JM, "let's do grown up stuff." McDaniel brought JM into

-1-

her bedroom where Allen-Bass was waiting. McDaniel laid down on her bed, and JM watched as Allen-Bass "put his mouth on [McDaniel's] private." McDaniel then placed JM on the bed and told her to lie down. During trial, JM consistently stated that Allen-Bass put his mouth on her genitals, although she vacillated between whether Richie Rich did this over or under her pajama pants. After the disclosure, AB spoke with foster care worker, Elizabeth Bury, about JM's allegations, and Bury reported the sexual assault to the police. McDaniel was charged with one count of CSC-I for the incident involving Allen-Bass.[1]

After two delays, McDaniel's and Allen-Bass's joint trial began in February 2022. At the beginning of the first day of trial, McDaniel's counsel moved to withdraw. Counsel explained that when he communicated to McDaniel a plea offer received from the prosecutor, McDaniel got angry and called counsel a liar because he "promised her that the case was going to be dismissed," and that "she'd be coming home." McDaniel also insinuated that counsel "was going to throw the case . . . because she wouldn't take the [plea] offer." Further, in a recorded phone call made from jail, McDaniel threatened to sue counsel if she was convicted and used derogatory language about him. The trial court denied counsel's motion to withdraw.

At trial, JM, then 9 years old, described how she was sexually assaulted by Allen-Bass in front of her mother. At times, JM made contradictory statements. At several points, JM stated that her pajamas were on the entire time and that Allen-Bass was breathing on her privates over her pajamas. But JM also said that Allen-Bass pulled down her pajama pants and she felt his teeth on her skin. Whether her pants were up or down and whether she felt his teeth or not, JM did consistently state that she felt Allen-Bass's breath in her genital area. Counsel for McDaniel and Allen-Bass attacked JM's credibility in other ways as well. JM claimed that while she was in AB's care, AB pointed a gun at her. But AB denied that this ever happened. Instead, AB claimed that JM said Bury told her to lie about this incident. JM denied ever telling AB that Bury told her to lie.

Additionally, during Ypsilanti Police Detective Brian Lewandowski's testimony, the prosecutor briefly questioned him about alleged threats made against JM. Detective Lewandowski confirmed JM had received death threats from McDaniel's family in order to prevent her from testifying. On cross-examination, Detective Lewandowski confirmed there were no charges against McDaniel regarding any alleged threats or sufficient evidence to tie her to the threats. On redirect, Detective Lewandowski stated that McDaniel's son, JM2, told him that the threats made against JM came from McDaniel.

Throughout closing arguments, the prosecutor argued the evidence showed McDaniel aided and abetted Allen-Bass in sexually assaulting JM. By contrast, defense counsel argued the prosecutor failed to prove JM was sexually assaulted. Counsel emphasized that JM had testified inconsistently and had lied about certain events, such as the incident with AB and the gun. The prosecutor retorted that the jury should not consider that incident, characterizing defense counsel's

---

[1] We note that JM made a second disclosure involving McDaniel and her other codefendant, Robert Whitsett. McDaniel was charged with a second count of CSC-I for her role in aiding and abetting Whitsett and, as of the writing of this opinion, is awaiting trial.

argument as a red herring. The jury found McDaniel guilty of CSC-I, and the trial court sentenced McDaniel to 25 to 50 years' imprisonment. This appeal followed.

## II.  MOTION TO WITHDRAW

McDaniel argues she was denied due process and the right to effective assistance of counsel because the trial court denied defense counsel's request to withdraw from representation despite a showing of good cause.

## A.  STANDARD OF REVIEW

We review for an abuse of discretion both a trial court's denial of a motion for withdrawal of counsel and of a motion for substitute counsel. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). When reviewing a trial court's denial of a defense attorney's motion to withdraw, we consider:

> (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).]

## B.  DISCUSSION

The federal and state constitutions grant the right to counsel in all criminal prosecutions. US Const, Am VI; Const 1963, art 1, § 20. The right to counsel includes the right to counsel of choice. *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003). But this right "is not absolute. A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *Id*. (cleaned up). Trial courts have "wide latitude in balancing the right to counsel of choice against" the demands of the court's calendar and fairness. *People v Aceval*, 282 Mich App 379, 387; 764 NW2d 285 (2009) (cleaned up).

The record does not reveal any error. Defense counsel moved to withdraw from representation the morning trial was set to begin, claiming there had been a breakdown in the attorney-client relationship over the weekend before trial. Counsel stated that when he went to discuss a plea offer with McDaniel, she called him a liar and insinuated that counsel was throwing her case. Additionally, in a recorded phone call McDaniel made to her mother from jail, she threatened to sue counsel if she was convicted and used derogatory language about counsel. While this evidence suggests that there was a disagreement between counsel and McDaniel, this was the first and only incident reported throughout the 15-month pretrial process. McDaniel had not retained substitute counsel, and the trial would have had to be adjourned to give McDaniel time to obtain new representation. But the trial had already been delayed twice. McDaniel was being tried jointly with Allen-Bass, and she had a second joint trial awaiting with Whitsett, although

Whitsett later entered a plea. Any delay in the current trial would have placed an unreasonably heavy burden on Allen-Bass's and Whitsett's attorneys and further delayed the administration of justice. See *Akins*, 259 Mich App at 558-559.

The trial court also sufficiently balanced McDaniel's right to counsel of choice against the public's interest in the efficiency of trial. The court expressly considered McDaniel's right to counsel of choice, whether there was a complete breakdown in the attorney-client relationship, the timing of the dispute and the tension McDaniel felt before trial, the effect of any delay given that the motion was brought the morning of trial, and the quality of defense counsel's representation. In weighing these factors, the trial court ultimately concluded:

> In the end, it's a difficult call Ms. McDaniel. You are guaranteed an attorney. There's no question about that, but you're not necessarily guaranteed one that you get to choose the day of trial.
>
> So—you know for better or worse I know Mr. Goldstein is an attorney who has been practicing in this county for decades and has represented hundreds if not thousands of clients and done an exceptional job with them.
>
> And so I don't find any fault in anything that he reported to you that at least I heard that you reported to your mother and as he details on the record today what he reported to you.
>
> So I'm confident he's going to do a good job and I'm denying the motion. So we're going to trial today.

Because substituting counsel the day trial was set to begin would have unreasonably delayed the judicial process, the trial court's denial of counsel's motion to withdraw was not outside the range of reasonable and principled outcomes. Further, because McDaniel fails to identify *any* prejudice arising from this decision, *Young*, 276 Mich App at 448, there is no error justifying reversal of McDaniel's conviction.

## III. INSUFFICIENT EVIDENCE

McDaniel was convicted of CSC-I as an aider and abettor. She argues that her conviction should be vacated because the prosecution failed to produce sufficient evidence to prove that Allen-Bass sexually penetrated JM. She does not challenge whether there was sufficient evidence to show that she aided and abetted Allen-Bass.

## A. STANDARD OF REVIEW

We review a sufficiency-of-the-evidence challenge de novo, meaning "we do not defer to any decision made by the trial court, but instead employ our independent judicial views while employing the well-settled standards for deciding sufficiency issues." *People v Harverson*, 291 Mich App 171, 176; 804 NW2d 757 (2010). In determining whether sufficient evidence was presented to support a conviction, we view the evidence in a light most favorable to the prosecution, with any conflicts in the evidence resolved in the prosecution's favor, to determine

-4-

whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. DISCUSSION

McDaniel was convicted of CSC-I under an aider and abettor theory, in which a person who renders assistance to the perpetrator of a crime may be convicted of the crime "as if he had directly committed such offense." MCL 767.39; see also *People v Bulls*, 262 Mich App 618, 625; 687 NW2d 159 (2004). To support a finding of aiding and abetting, the prosecutor must show:

> (1) *the crime charged was committed by the defendant or some other person*, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999) (cleaned up, emphasis added).]

McDaniel only challenges the first prong of this test, claiming there is insufficient evidence to support her conviction because the prosecutor failed to show that Allen-Bass sexually penetrated JM.

To convict a defendant of CSC-I, the prosecutor must prove beyond a reasonable doubt that the defendant engaged in sexual penetration of a person under 13 years old. MCL 750.520b(1)(a). Sexual penetration includes "sexual intercourse, *cunnilingus*, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." MCL 750.520a(r) (emphasis added). Under this definition, penetration includes *any* intrusion into the labia majora. *People v Lockett*, 295 Mich App 165, 188; 814 NW2d 295 (2012). Cunnilingus constitutes sexual penetration because the act requires a person's mouth to be placed "upon the external genital organs of the female which lie between the labia." *People v Legg*, 197 Mich App 131, 133; 494 NW2d 797 (1992).

Because a victim's "testimony regarding a defendant's commission of sexual acts is sufficient evidence to support a conviction for CSC-I," a victim's testimony that the defendant touched the "urethral opening, vaginal opening, or labia" with his mouth can establish sexual penetration through cunnilingus. *Id.*; see also *People v Bailey*, 310 Mich App 703, 714; 873 NW2d 855 (2015). The introduction of conflicting evidence does not affect the sufficiency of the victim's testimony because, as the trier of fact, the jury may choose which evidence to believe. *People v Smith*, 205 Mich App 69, 71; 517 NW2d 225 (1994), lv gtd in part on other grounds 447 Mich 1041 (1994). "If the jury [chooses] to believe the victim's testimony, they would be justified in convicting defendant" of the charged offense despite the introduction of conflicting evidence. *Id.*

At trial, JM testified that while she was laying on her mother's bed, Allen-Bass pulled down her pajama pants. She testified Allen-Bass put his mouth on her "privates," and she could

feel him breathing on her "privates," and felt his teeth on her skin. JM confirmed that her "privates" referred to her genitals, or the parts of her body that she used to urinate. JM did not testify consistently, stating at other points that Allen-Bass did not pull down her pajama pants and she felt his breath through her pants. This did not affect the sufficiency of her testimony; rather, it created a credibility issue for the jury to decide. *Smith*, 205 Mich App at 71. Thus, viewing the evidence in the light most favorable to the prosecution, *Solloway*, 316 Mich App at 180-181, and resolving credibility contests in favor of the jury verdict, a rational trier of fact could find JM's testimony establishes that Allen-Bass sexually penetrated her through cunnilingus in violation of MCL 750.520b(1)(a).

McDaniel claims that the evidence is insufficient to prove Allen-Bass performed cunnilingus because JM's statement that she felt Allen-Bass's teeth in her privates only proves contact, not penetration. But sexual penetration through cunnilingus includes *any* intrusion, no matter how slight, into the labia majora through the use of one's mouth. *Lockett*, 295 Mich App at 188; MCL 750.520a(r). That JM expressly stated Allen-Bass's mouth and teeth touched the skin of her privates—which she confirmed was the area of her body that she used to urinate—is enough to sufficiently establish sexual penetration through cunnilingus. See *Legg*, 197 Mich App at 133.

## IV. PROSECUTORIAL MISCONDUCT[2]

McDaniel claims that the prosecutor engaged in misconduct because she elicited prejudicial testimony concerning witness intimidation and denigrated defense counsel during closing arguments. Alternatively, McDaniel argues that because defense counsel did not object to the prosecutor's elicitation of prejudicial testimony and derogatory statements, she was denied the effective assistance of counsel.

### A. STANDARDS OF REVIEW

Because McDaniel did not object to the prosecutor's statements during trial, and "a defendant must contemporaneously object and request a curative instruction to preserve an issue of misconduct for appellate review," *Solloway*, 316 Mich App at 201 (cleaned up), her argument is unpreserved for appellate review. We review unpreserved allegations of prosecutorial misconduct "for plain error affecting substantial rights." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425; 884 NW2d 297 (2015). There is no "error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* (cleaned up). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."

---

[2] This Court explained in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), that the term "prosecutorial misconduct" has become a term of art used to describe any error that has been committed by the prosecution. The *Cooper* Court concluded that claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct[,]' " such as those actions that are fraudulent or that violate the Michigan Rules of Professional Conduct. *Id.*

*People v Bailey*, 330 Mich App 41, 53-54; 944 NW2d 370 (2019) (cleaned up). This third requirement "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 54 (cleaned up). "Reversal will only be warranted when the plain error leads to the conviction of an actually innocent defendant or when an error affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (cleaned up).

Additionally, because McDaniel did not move for a new trial or evidentiary hearing, her ineffective assistance of counsel claim is also unpreserved. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Claims of ineffective assistance of counsel present mixed questions of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). But where no evidentiary hearing has been held, our review is limited to errors apparent from the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

## B. DISCUSSION

McDaniel first contends that the prosecutor engaged in misconduct because she elicited prejudicial testimony from Detective Lewandowski that McDaniel's family had been threatening JM to try to prevent her from testifying.

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a "case-by-case basis," and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Jackson*, 313 Mich App at 426. "Generally, prosecutors are accorded great latitude regarding their arguments and conduct," and are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of their case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (cleaned up). But claims of prosecutorial misconduct may not be based on a prosecutor's good-faith efforts to admit evidence. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).

Evidence of threats can be admissible for two general purposes. First, threats made against a witness may be relevant and admissible to demonstrate a defendant's consciousness of guilt. *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). But this evidence is admissible only if there is evidence connecting the threats to the defendant. *People v Walker*, 150 Mich App 597, 603; 389 NW2d 704 (1985); *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982).[3] Second, threats against a witness may also be relevant to show the witness's bias or reluctance to testify. *People v Norrell Johnson*, 174 Mich App 108, 112; 435 NW2d 465 (1989). In that situation, the evidence is admissible because it is probative of the witness's credibility and there is no requirement that the threats be directly linked to the defendant. *Id*.

---

[3] Opinions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are generally afforded some deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

During Detective Lewandowski's testimony, the prosecutor asked him if, during his investigation into JM's allegations, he obtained any information related to witness intimidation. Detective Lewandowski confirmed that he learned JM was receiving death threats from McDaniel's family. On cross-examination, Detective Lewandowski admitted there were no charges brought against McDaniel for the death threats and that there was insufficient evidence to tie her to the threats. But during redirect, Detective Lewandowski explained that he received information from McDaniel's 3-year-old son, JM2, indicating the threats against JM came from McDaniel.

Reading the testimony in context, it does not appear that the prosecutor was asking the questions to demonstrate McDaniel's consciousness of guilt or JM's bias or reluctance to testify. Rather, it appears to be a general challenge to defendant's credibility. *Sholl*, 453 Mich at 740; *Norrell Johnson*, 174 Mich App at 112. Although Detective Lewandowski stated that he had *some* information from JM2 linking the death threats to McDaniel, he admitted that there was insufficient evidence to establish the threats came from her. Assuming the prosecutor erred by eliciting this testimony, relief would not be warranted. Because McDaniel's argument is reviewed for plain error, in order to obtain relief she must also prove that this error affected the outcome of the lower court proceedings, meaning it resulted in the conviction of "an actually innocent defendant," or it affected "the fairness, integrity, or public reputation of judicial proceedings." *Bailey*, 330 Mich App at 54 (cleaned up).

McDaniel, without further explanation, claims that even if a cautionary instruction had been given, the instruction could not have cured this error. Because McDaniel provides no evidence to support her argument, it is considered abandoned. See *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008) ("Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." (cleaned up)). Even if McDaniel had not abandoned this argument, her assertion conflicts with existing law, which presumes that jurors follow their instructions and instructions presumptively cure most errors. *People v Mesik*, 285 Mich App 535, 543; 775 NW2d 857 (2009). Because McDaniel has failed to prove that she was prejudiced by the prosecutor's error, she is not entitled to relief.

McDaniel also argues that the prosecutor engaged in misconduct because she personally attacked and denigrated the defense by referring to defense counsel's argument as a "red herring."

A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury, personally attack defense counsel, or denigrate the defense. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001); *People v Kennebrew*, 220 Mich App 601, 607-608; 560 NW2d 354 (1996); *Bahoda*, 448 Mich at 283. But because the prosecutor's comments must be considered in light of defense counsel's arguments, *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997), a comment that might otherwise be improper "may not rise to an error requiring reversal when the prosecutor is responding to defense counsel's argument." *Kennebrew*, 220 Mich App at 608. This Court has also held that, without more, a prosecutor's designation of a defense argument as a "red herring" does not constitute prosecutorial misconduct requiring reversal. *Dobek*, 274 Mich App at 67-68.

During closing arguments, defense counsel emphasized to the jury that JM's testimony was inconsistent and challenged the truthfulness of her statements. In support of this contention,

defense counsel stated that JM had accused AB of pointing a gun at her, despite AB denying that incident ever happened. Counsel even went so far as to claim that "[JM] is perfectly capable of making up some pretty strange stories and you should consider that when you decide what really happened in this case." In rebuttal, the prosecutor challenged defense counsel's reliance on the alleged incident between JM and AB, stating:

> Mr. Goldstein is a seasoned attorney and kind of wants to bring up these red herrings about some incident with [AB] and a knife and none of that is relevant to the case at hand here. It's not relevant, nothing's been admitted about it.

> And so it's a piece of evidence that you shouldn't consider. It's his question to these witnesses to try to distract you from the real issue here[:] is Ms. McDaniel guilty of criminal sexual conduct in the first degree. That's what we're here to decide.

Reading the record in context, the prosecutor's "red herring" comment stemmed from defense counsel's argument that JM was an incredible witness based, in part, on her contested claim that AB pointed a gun at her. The prosecutor's statements challenged the relevance of the incident between AB and JM, emphasizing that it was unnecessary for the jury to consider it when determining whether McDaniel was guilty of CSC-I. Because the prosecutor's statements were made in response to the argument submitted by defense counsel, there is no error requiring reversal. See *Kennebrew*, 220 Mich App at 608. Further, because McDaniel failed to show that the prosecutor's elicitation of Detective Lewandowski's testimony prejudiced the lower court proceedings, and the prosecutor made no other comments denigrating or personally attacking defense counsel, the prosecutor's "red herring" comment, standing alone, does not merit reversal of McDaniel's conviction. See *Dobek*, 274 Mich App at 67-68.

Alternatively, McDaniel argues that because defense counsel did not object to the prosecutor's elicitation of Detective Lewandowski's testimony and statements made during closing arguments, she was denied the effective assistance of counsel.

The Michigan and United States Constitutions guarantee the assistance of counsel to criminal defendants. Const 1963, art 1, § 20; US Const Am VI. "The right to counsel . . . is the right to the effective assistance of counsel." *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016). "To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (cleaned up). This Court presumes that counsel was effective, and "the defendant bears a heavy burden of proving otherwise." *Head*, 323 Mich App at 539 (cleaned up). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

As stated, McDaniel has failed to prove that the prosecutor's elicitation of Detective Lewandowski's testimony about the threats made against JM affected the outcome of the lower court proceedings. *Bailey*, 330 Mich App at 54. She has also failed to show that the prosecutor's

lone "red herring" comment amounted to prosecutorial misconduct. *Dobek*, 274 Mich App at 67-68. Thus, any objection by defense counsel would have been futile. *Ericksen*, 288 Mich App at 201. Because McDaniel cannot show there is a reasonable probability that but for counsel's failure to object to these alleged errors, the outcome of her trial would have been different, *Randolph*, 502 Mich at 9, she is not entitled to relief.

We affirm.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Kristina Robinson Garrett